**Ruth ROBINSON, Plaintiff-Appellant,**

v.

**The BOARD OF REGENTS OF EASTERN KENTUCKY UNIVERSITY, a Body Corporate, and Robert R. Martin, President of Eastern Kentucky University, Defendants-Appellees.**

No. 72–1867.

United States Court of Appeals,
Sixth Circuit

March 28, 1973.

Robert Allen Sedler, Lexington, Ky., for plaintiff-appellant.

Bert T. Combs, Louisville, Ky., for defendants-appellees; Charles R. Simons, Louisville, Ky. (Tarrant, Combs, Blackwell & Bullitt, Louisville, Ky., of counsel), John W. Palmore, Richmond, Ky., on brief.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is another case in which this Court is urged to assume the prerogatives of a super Board of Regents and make a decision concerning the internal administrative affairs of a university involving no violation of any constitutional right of any student. This we decline to do.

Like many universities and colleges, Eastern Kentucky University promulgated dormitory hour regulations for women students during the 1971–72 academic year. During their freshman year, women students were required to be in their dormitories by 10:30 p. m. Monday through Thursday. The curfew hour on Friday and Saturday nights was 1 a. m. and 12:00 midnight was the Sunday curfew.

Beginning with the second year of study, the women students could have the privilege of unrestricted hours with no curfew requiring their presence in their dormitory by a certain hour. Three conditions had to be met, however, to qualify for this privilege: 1) the student was required to have a C average

in her academic work and not be on academic or social probation; 2) she was required to pay a $15 fee per semester;[1] 3) if under 21, the student was required to gain her parents' written consent to the exercise of self-regulated hours. Those sophomore, junior and senior women failing to qualify for unrestricted hours were required to be in their dormitories by midnight Sunday through Thursday and by 2 a. m. on Friday and Saturday nights. The regulations were issued by the Board of Regents of the University, an agency of the Commonwealth of Kentucky, K.R.S. § 164.310. These regulations were clearly those of the State.

During the pendency of this action, the University announced new regulations in this area. First semester freshman women, under the new regulations, are required to be in their dormitory by midnight Sunday through Thursday and by 2 a. m. on Friday and Saturday nights. All other women students in the University can have self-regulated hours by paying a $10 fee per semester and gaining permission of their parents if they are under 21. All women who do not have self-regulated hours are subject to the same curfews as the first-semester freshmen. It should be noted that at no time relevant to this action, either under the old or new regulations, have there been any curfew restrictions on male students at Eastern Kentucky.

Appellant's class action was filed in the District Court for the Eastern District of Kentucky during the 1971–72 school year when she was a freshman at Eastern Kentucky. She claims that the University, by imposing dormitory hours for women, while granting self-regulated hours to all male students, regardless of age or permission from their parents, has violated her Fourteenth Amendment right to the equal protection of the law. Appellant appeals from the dismissal of her suit by the District Court. We affirm.

Appellant was a sophomore at the University at the time of the District Court's dismissal of her suit. She claims that even though under the presently applicable dormitory regulations she can, and does, have self-regulated hours with her parents' permission, the fact that she must get her parents' permission for unrestricted hours while male students need not get such permission results in a continuing denial of her equal protection rights. In view of our disposition of this case we need not decide this issue.

At the outset, we point out that students, no less than any other citizens of the United States, are protected by the Constitution of the United States. For a general discussion, see Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027 (1969). As the Supreme Court stated, in Tinker v. Des Moines School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969): "It can hardly be argued that either students or teachers shed their constitutional rights . . . at the schoolhouse gate." See also Healy v. James, 408 U.S. 169, 180, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). Although Tinker concentrated on the First Amendment rights of students, we construe it as equally applicable to all constitutional protections. It also is clear that the state, in operating a public system of higher education, cannot condition attendance at one of its schools on the student's renunciation of his constitutional rights. West Virginia v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961); Knight v. State Board

---

1. The District Court found that the $10 fee per semester under the new regulations charged to those women with unrestricted or self-regulated hours is "to defray the cost of security guards and additional monitoring services necessary for those dormitories which remain open all night." The men's dormitories on the campus do not have such service. Presumably, the same justification was present for the $15 fee under the original regulations. No contention is made by the appellant that the fee is improper or in any way restrictive of her rights.

of Education, 200 F.Supp. 174 (M.D. Tenn.1961).

However, the Supreme Court has recognized repeatedly that the campus presents a unique situation which imposes special considerations in the application of Constitutional protections and "judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint . . . ." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed. 2d 228 (1968). *See also Tinker, supra,* 393 U.S. at 507, 89 S.Ct. 733; Bright v. Nunn, 448 F.2d 245 (6th Cir. 1971); Norton v. Discipline Committee of East Tennessee State University, 419 F.2d 195 (6th Cir. 1969).

■ The equal protection clause does not require identical treatment for all people. The states retain, under the Fourteenth Amendment, the power to treat different classes of persons in different ways. Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885). This is a well-established doctrine, dating from soon after the ratification of the Fourteenth Amendment. Courts often have upheld state classifications based on sex. Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); Schattman v. Texas Employment Commission, 459 F. 2d 32 (5th Cir. 1972), cert. denied, —— U.S. ——, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973); Gruenwald v. Gardner, 390 F.2d 591 (2d Cir.), cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968). Therefore, the appellant has not overcome the presumptive validity of the state regulations involved, McDonald, *supra,* merely by showing that one set of rules applied to men and another to women students at Eastern Kentucky.

Before addressing the question of whether there has been a deprivation of the right of appellant to equal protection of the law, we must determine which standard of review will be applicable. Two separate and distinct standards of review under the equal protection clause have emerged. The first, which has a much longer history, is the traditional or rational basis test. It requires that a state classification be upheld unless there is no rational relationship between the classification imposed by the state and the state's reasonable goals. Under this standard, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). *See also* Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

■ The second alternative standard, the compelling state interest test, is relatively recent in formulation and provides a greater burden for the state to meet in justifying a classification in its statutes or regulations. This test, which becomes applicable when a fundamental right of the aggrieved party is at issue or a suspect classification, such as race, is used, requires that to justify the classification, the state must demonstrate a compelling state interest. Fundamental interests which have triggered the application of the compelling state interest test have included the right to vote, Dunn v. Blumstein, 405 U.S. 330, 337, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Evans v. Cornman, 398 U.S. 419, 422, 90 S.Ct. 1752, 26 L.Ed. 2d 370 (1970); the right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); the right to procreate, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and the right to fair treatment in criminal appeals, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). At least one commentator has observed that the Supreme Court seems to be very reluctant to extend the scope of the so-called "new equal protection" and declined to insert its application into new areas last Term. Gunther, The Supreme Court 1971 Term: Foreword, 86 Harv.L.Rev. 1, 12–13 (1972).

In its most recent case involving discrimination on the basis of sex, the Supreme Court, although striking down the Idaho statute in question, did not apply the compelling state interest standard. Instead, in *Reed, supra,* 404 U.S. at 76, 92 S.Ct. at 254, the Court carefully framed the issue as "whether a difference in the sex of competing applicants for letters of administration *bears a rational relationship* to a state objective . . . ." (emphasis added). By the holding, the Court impliedly denied the contention of the appellant in that case that sex is a "suspect classification," capable of triggering the application of the compelling state interest standard. The most recent case in this circuit concerning discrimination on the basis of sex also imposed the rational relationship test and refused to find that discrimination by sex was a suspect classification. *Morris v. Michigan State Board of Education,* 472 F.2d 1207 (6th Cir. 1973). Likewise, in this case we can find neither a fundamental right at issue nor a suspect classification being applied. The right which is the subject of regulation here is the right to have self-regulated hours without parental permission. This is not fundamental. We reaffirm that classification on the basis of sex is not a suspect classification. Therefore, we conclude that the rational relationship or traditional standard of equal protection review is applicable here.

The State's basic justification for the classification system is that of safety. It asserts that women are more likely to be criminally attacked later at night and are physically less capable of defending themselves than men. It concludes that the safety of women will be protected by having them in their dormitories at certain hours of the night. The goal of safety is a legitimate concern of the Board of Regents and this court cannot say that the regulations in question are not rationally related to the effectuation of this reasonable goal.

The appellant claims that the safety justification is undermined by the shifting curfew for different nights of the week asserting that the streets are no safer at 12:30 a. m. on Saturday than they are at 12:30 a. m. on Wednesday. We hold, however, that the State could properly take into consideration the fact that on weekend nights many coeds have dates and ought to be permitted to stay out later than on weekday nights. A classification having some reasonable basis does not offend the equal protection clause merely because it is not drawn with mathematical nicety. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) ; *Lindsley, supra.*

We are mindful of this court's recent decision in LaFleur v. Cleveland Board of Education, 465 F.2d 1185 (6th Cir. 1972), petition for cert. granted, 41 U.S. L.W. 3565 (April 23, 1973). We conclude that our affirmance of the District Court in the present case is not inconsistent with the majority opinion in *LaFleur,* in which this court held that a rule requiring pregnant teachers to take a 5-month pre-delivery leave was unconstitutionally discriminatory. The core of that opinion was that men, as well as women, are subject to "illnesses and disabilities," while only pregnant women were required to take leave. The *LaFleur* regulation was struck down for overbreadth. We do not read *LaFleur* or any other case as holding or implying that discrimination based on sex is unconstitutional *per se.*

We hold that the Board of Regents of Eastern Kentucky, an agency of the Commonwealth, has promulgated a reasonable regulation to promote the legitimate aims of the state.

Affirmed.