Mary **BOWEN**, Individually, as mother and next friend of Mark Bowen, a minor, and on behalf of all others similarly situated

v.

Mary C. **HACKETT**, Director of the Rhode Island Department of Employment Security.

Sharon **FERRI**, Individually, as mother and next friend of Mark Ferri, a minor, and on behalf of all others similarly situated

v.

Mary C. **HACKETT**, Director of the Rhode Island Department of Employment Security.

Civ. A. Nos. 5038, 5043.

United States District Court, D. Rhode Island.

July 13, 1973.

Kenneth F. MacIver, Jr., John M. Roney of R. I. Legal Services, Inc., Providence, R. I., for plaintiffs.

W. Slater Allen, Jr., Asst. Atty. Gen., Providence, R. I., Louis Baruch Rubinstein and Charles H. McLaughlin, R. I. Dept. of Employment Security, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

Disparities between the treatment of women and of men with regard to dependent's allowances under the Rhode Island unemployment compensation and temporary disability insurance laws are challenged here. Seeking equality of the sexes under the law, plaintiffs originally asked that the offending sections of the Rhode Island laws be declared unconstitutional and in violation of certain provisions of the Social Security Act, 42 U. S.C. § 503(a)(1); that injunctions issue against these sections of the Rhode Island statutes; that damages be awarded the named plaintiffs, with interest, costs, and attorneys fees; and for such other relief as this Court deems just.

Jurisdiction is present under 28 U.S. C. § 1343; causes of action are asserted under 42 U.S.C.A. § 1983. Because injunctions were sought against statutes of state-wide application, a three-judge court was convened pursuant to 28 U.S. C. §§ 2281 and 2284. Like constitutional challenges being presented to the unemployment compensation law and to the temporary disability insurance law, these two actions were ordered consolidated. It was certified as a class action under Fed.R.Civ.P. 23(b)(2).

Plaintiffs moved for a preliminary injunction and then for summary judgment. An evidentiary hearing was held before the three-judge court. At the hearing it was represented that the statutes in question have been recently amended and the challenged language has been deleted.[1] The parties agreed

---

1. The amended statutes, effective May 11, 1973, are set forth below:
   "28-41-5. WEEKLY BENEFIT RATE.—
   \*    \*    \*    \*    \*

   *Dependents' Allowances.*—An individual to whom benefits for unemployment due to sickness are payable under this chapter with respect to any week, shall, in addition to such benefits, be paid with

that the request for prospective injunctive relief is moot and plaintiffs dropped their request for an injunction against the enforcement of the statutes. The statutory requirements for a three-judge court no longer being present, an order was entered remanding the action to a single judge for determination. See Edelman v. Townsend, 412 U.S. 914, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973) (judgment of 3-judge court vacated, remanded for entry of fresh judgment from which timely appeal may be taken to court of appeals); and see Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L. Ed.2d 442 (1970).

■ Also at oral argument, counsel for plaintiffs stated that relief in the form of retroactive or back payments due to members of the class was sought.[2] It was also stated that plaintiffs do not

---

respect to each week a dependent's allowance of three dollars ($3.00) for each of such individual's children, including adopted and stepchildren who, at the beginning of the individual's benefit year is under eighteen (18) years of age and who is at that time in fact dependent on such individual. Such a dependent's allowance shall also be paid to such individual for any child, including an adopted child or a stepchild, eighteen (18) years of age or over, incapable of earning any wages because of mental or physical incapacity, and who is dependent on such individual in fact at the beginning of the individual's benefit year. In no event shall the weekly total of dependents' allowances to any individual exceed the sum of twelve dollars ($12.00). The number of an individual's dependents, and the fact of their dependency, shall be determined as of the beginning of such individual's benefit year; provided, however, that only one individual shall be entitled to a dependent's allowance for the same dependent with respect to any week. *Each individual who claims a dependent's allowance shall establish his claim thereto to the satisfaction of the director under procedures established by the director.* This provision shall be effective for all benefit years beginning on or after the date that this act takes effect."

*and*

"28–44–6. WEEKLY BENEFITS FOR TOTAL UNEMPLOYMENT— YEAR ESTABLISHED.—

\* \* \* \* \*

*Dependents' Allowances.*—An individual to whom benefits for total or partial unemployment are payable under this chapter with respect to any week, shall, in addition to such benefits, be paid with respect to each week, a dependents' allowance of five dollars ($5.00) for each of such individual's children, including adopted and stepchildren, who at the beginning of the individual's benefit year, is under eight-

een (18) years of age and who is at that time in fact dependent on such individual. Such a dependent's allowance shall also be paid to such individual for any child, including an adopted child or a stepchild, eighteen (18) years of age or over, incapable of earning any wages because of mental or physical incapacity, and who is dependent on such individual in fact at the beginning of the individual's benefit year. In no event shall the weekly total of dependents' allowances payable to any individual exceed the sum of twenty dollars ($20.00). The number of an individual's dependents, and the fact of their dependency, shall be determined as of the beginning of such individual's benefit year; provided, however, that only one individual shall be entitled to a dependent's allowance for the same dependent with respect to any week. *Each individual who claims a dependent's allowance shall establish his claim thereto to the satisfaction of the director under procedures established by the director.* This provision shall be effective for all benefit years beginning on or after the date that this act takes effect." (emphasis added)

Defendant has also promulgated new administrative regulations pursuant to the amended statutes. Male and female applicants now appear to be treated equally in administrative practice.

2. The complaint did not specifically claim back payments for members of the class. Counsel purports to find this claim in the request that the Court issue such other relief as it may deem just. Without reaching counsel's argument, the oral statement that plaintiffs are seeking back payments for the class will be treated as a motion to amend the complaint, and so treated, granted. Fed.R.Civ.P. 15. The Court notes that in pretrial proceedings on this matter, all parties assumed there was an issue of retroactive benefits to the class.

seek punitive damages. Because declaratory judgment and retroactive payments are sought against the original statutes, the case is not moot.

### Findings of Fact

Plaintiff Mary Bowen, a citizen of Rhode Island receives unemployment insurance benefits from the Rhode Island Department of Employment Security. She is divorced and has custody of the only child, Mark Bowen, a minor. Her ex-husband is under court order to pay $25.00 per week child support. Even with the support payments Mary Bowen provides more than fifty percent of Mark's support.

In making her application for unemployment compensation, plaintiff Bowen also sought a dependent's allowance for her son. Under R.I.G.L. § 28–44–6(C) (1956, 1968 Reenactment) an individual receiving unemployment benefits is entitled to a dependent's allowance of $5.00 for each of that individual's minor dependent children. Mary Bowen's application for the dependent's allowance for Mark was rejected pursuant to another portion of R.I.G.L. § 28–44–6(C), as set forth and italicized below:

"(C) Dependents' allowance.—An individual to whom benefits for total or partial unemployment are payable under this chapter with respect to any week, shall, in addition to the benefits payable under paragraphs (A) and (B) hereof, be paid with respect to each week, a dependents' allowance of five dollars ($5.00) for each of such individual's children, including adopted and stepchildren, who, at the beginning of the individual's benefit year, were under eighteen (18) years of age, and also for each child eighteen (18) years of age or over incapable of earning any wages because of mental or physical incapacity who is dependent upon him in law and in fact at the beginning of the individual's benefit year, but in no event shall the weekly total of such allowance exceed the sum of twenty dollars ($20.00); *provided, however, where the individual making*

*the claim is a woman, the dependency status of such children shall be established to the satisfaction of the director."*

Mary Bowen's application for the dependency allowance was denied on the basis that as a woman she had to prove she totally supported her son and that she did not totally support Mark because she received support payments from her ex-husband.

Sharon Ferri, a citizen of Rhode Island, receives temporary disability insurance (T.D.I.) benefits from the Rhode Island Department of Employment Security. She is divorced and has custody of the only child, Mark Ferri, a minor. Although her ex-husband was under court order to pay $20.00 per week child support, these payments were infrequently made and are over $1,000.00 in arrears. The present support order requires him to pay $15.00 per week plus $2.00 per week toward the arrearage. He still fails to make most payments. Sharon Ferri provides more than fifty percent of her child's support.

In the course of applying for temporary disability benefits, Sharon Ferri also applied for a dependent's allowance for her son. Under R.I.G.L. § 28–41–5(C) (1956, 1968 Reenactment) an individual who receives unemployment benefits due to sickness (temporary disability benefits) is entitled to a dependent's allowance of $3.00 for each of that individual's minor dependent children. Sharon Ferri's application for the dependent's allowance was denied under another section of R.I.G.L. § 28–41–5(C), as set forth and italicized below:

"(C) Dependent Allowances.—An individual to whom benefits for unemployment due to sickness are payable under this chapter with respect to any week, shall, in addition to the benefits payable under paragraphs (A) and (B) hereof, be paid with respect to each week, a dependent's allowance of three dollars ($3.00) for each of such individual's children, including adopted and stepchildren, who, at the beginning of the individual's benefit year,

were under eighteen (18) years of age, and also for each child eighteen (18) years of age or over, incapable of earning any wages because of mental or physical incapacity who is dependent upon him at law and in fact at the beginning of the individual's benefit year but in no event shall the weekly total of such allowance exceed the sum of twelve dollars ($12.00); *provided, however, where the individual making the claim is a woman, the dependency status of such children shall be established to the satisfaction of the director;* provided, further, however, that dependency status of the children of an individual whose benefit year has been established prior thereto and who is otherwise eligible shall be determined as of the first week for which he claims benefits subsequent to November 16, 1958."

Her claim for dependent's allowance was rejected because she was a woman and so had to prove that her child was dependent on her; she could not prove dependency to the satisfaction of the director because of the court order of child support.

Neither the unemployment insurance laws nor the temporary disability insurance laws define the statutory term "dependent . . . in fact." Under R.I. G.L. § 33–15–1, both parents are equally charged with the support of their minor children. Though not a necessary interpretation of the statute, the term "dependent . . . in fact" has been interpreted by defendant in the administrative practice of the D.E.S. to mean that a woman must prove that she provides *total* support for the child. It is the administrative practice of the D.E.S. not to require most male applicants to prove dependency; those who must prove dependency need only show that they contribute something to the support of the child.

Sharon Ferri unsuccessfully went through the administrative appeal procedure following denial of her claim. Mary Bowen did not go through the administrative appeal procedure. Both have challenged in this Court those portions of the unemployment and temporary disability laws that require women to prove dependency of children for whom they claim the dependency allowance increment to their benefits, and which do not impose a similar requirement on men. Plaintiffs assert that this disparity violates the Equal Protection Clause of the Fourteenth Amendment and the "when due" provisions of the Social Security Act, 42 U.S.C. § 503(a)(1).

Harold C. Walmsley, Chief of the Benefit Division of the Department of Employment Security, testified about the Department's prior procedures as to unemployment compensation dependency benefits. Applicants for unemployment compensation, both male and female, filled out an application form at an interview. The same form was used for both sexes and it contained questions about whether the applicant had dependents. The form also contained the following statement:

"Normally only the father may claim such dependents but where the mother has assumed *total* responsibility for the care of the children then the mother may claim such dependency allowances." (emphasis added)

The interviewer then either approved the dependency allowance application or referred it to an adjudicator according to policy guidelines established by the Department. According to the guidelines, an application from a widower or a widow was automatically approved. This is the only category in which similarly situated male and female applicants were treated equally.

As to male applicants, a man whose children shared his residence was automatically allowed dependents' allowances. A man whose children did not share the same residence was sent to the adjudicator. Likewise a man who claimed a stepchild was questioned. When the application of a male was questioned, the man only needed to demonstrate that he contributed *something* to the support of the children he claimed.

As to female applicants, separated or divorced women[3] were always questioned. If the applicant was a married woman living with her husband, she was denied the allowance unless she could prove her husband was disabled or did not work (e.g. a full-time student). A woman who was questioned had to demonstrate to the adjudicator that she provided the *total* support of the children she claimed. If there was a court order of child support from a man, the woman's application for dependent's allowance was denied whether or not she in fact received any child support.

It was possible that if the woman needed time to produce evidence in support of her claim that she totally supported the children, the delay would result in her missing one or more week's worth of dependent's allowances if her claim was finally approved. Aside from this, defendant showed that applicants who were approved and not investigated received payment between two and three weeks after the initial claim.

It thus appears that women unemployment compensation recipients who applied for dependent's allowances were treated differently from male applicants on at least three different levels:

1) women were asked to prove dependency when similarly situated men were not, e. g. women whose children reside with them as opposed to men whose children reside with them;

2) the standard of dependency was different for women who had to prove dependency than for men who had to prove dependency—that is, women had to show they totally supported the children while men had to show they contribute some support;

3) a conclusive presumption operated to deny women applicants dependent's allowances when they totally supported the children and there was a court order directing a male to provide child support. No such conclusive presumption operated against men.

Thomas J. Carr, chief of the Temporary Disability Insurance Division of the D.E.S. testified about the prior procedures for obtaining T.D.I. dependent's allowances. Applications for T.D.I. benefits are not made in person, as with unemployment compensation, but by mail. Where the T.D.I. applicant was female and had stated on the form that she had dependents, she was automatically sent a further questionnaire as to dependency. Eligibility was determined from the answers on this form and women with unsatisfactory answers were denied allowances. It was the policy to reject a woman's application, if, *inter alia*, her husband was alive and she had not proven he was permanently incapacitated, or if she was divorced or separated and had a court order of child support unless her husband had deserted her. Defendant established that though women are required to fill out an additional dependency form, it did not result in a delay in payment of the allowance if permitted.

Temporary disability benefits are paid from funds collected directly from insured employees, male and female alike.

*Conclusions of Law*

Defendant argues that plaintiffs should be required to exhaust their administrative and judicial remedies before pursuing this action. Going to the merits, defendant maintains the statute is constitutional[4] because it promotes the legitimate state interest of prevent-

---

3. There was no evidence presented as to how women who had never been married and had children were treated.

4. Defendant's position on the constitutionality of these statutes has shifted during this litigation. In the answer, defendant conceded that the language "where the individual making the claim is a woman" in both statutes was unconstitutional, and argued that the statutes should be properly read as requiring both men and women to prove actual dependency. Subsequently, in both oral argument and in memoranda, defendant has argued the statute is constitutional.

ing double payments for the same dependents and because it simply recognizes that "in most cases the main support of minor children is based on the father." Defendant also argues that the named plaintiffs are not entitled to recover back payments inasmuch as they do not provide the total support of their children.

█ Sharon Ferri has exhausted her administrative remedies and now would only have recourse to review of the administrative decision in the courts of Rhode Island. It is settled that a plaintiff in a civil rights action need not exhaust judicial remedies. Gibson v. Berryhill, 411 U.S. 564, 574 n. 13, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973); Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971). Mary Bowen has not exhausted any of the administrative remedies available to her, R.I.G.L. § 28–44–39 et seq. While it perhaps cannot be absolutely stated that exhaustion of administrative remedies is never required in a § 1983 action, Gibson, supra, 411 U.S. at 581, 93 S.Ct. 1689 (J. Marshall concurring), I find the administrative remedy open to plaintiff Bowen to be inadequate. Under the statute and the administrative rules, Mary Bowen is not entitled to the dependency allowance because she does not totally support her son. That is not at issue. What is at issue is whether the statute and administrative procedures are constitutional and consonant with the Social Security Act. It would be inappropriate to require exhaustion of administrative remedies where the issue is the constitutionality or validity of a statute the agency must enforce. The expertise of state administrative agencies does not extend to issues of constitutional law. See Brenden v. Independent School District 742, 342 F.Supp. 1224, 1230 (D.Minn. 1972).

█ The oft-given paradigm of judicial decision making is that a court should, where possible, decide the statutory claim to avoid rendering a decision on constitutional grounds. See Rosado v. Wyman, 397 U.S. 397, 402, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). In this case I shall deviate from this otherwise exemplary model. Here the statutory claims are murky, difficult, and previously unexplored.[5] In contrast, the constitutional claim is brilliantly illuminated by the recent decision of the United States Supreme Court in Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (May 14, 1973).

Frontiero involved fringe benefits in the uniformed services which were made available to any male serviceman who claimed his wife as a "dependent" without regard to whether or not she was dependent upon him for any part of her support, but which were made available to a female servicewoman only on proof that her husband was actually dependent on her for more than half of his support. By an eight to one judgment, the provisions of the statutes making this distinction were found to be an unconstitutional discrimination against women in violation of the Fifth Amendment due process clause. As defendant here has noted (albeit with regard to the lower court opinion reversed in Frontiero, supra), Frontiero is "practically on all fours" with the case at bar.

There was no majority opinion in Frontiero. Justice Brennan's opinion, joined in by three other Justices, found

5. The only authority plaintiffs cite in support of this claim is California Department of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), which held that California could not, consistent with § 303(a)(1) of the Social Security Act, suspend unemployment compensation benefits during an employer's appeal after the recipient has been found to be eligible at a preliminary interview. At issue here is whether the state may use different procedures for men and for women in determining initial eligibility for dependent's allowances—an issue which Java seems to touch peripherally at best. Defendant disputes whether § 303(a)(1) of the Act applies to dependent's allowances and to temporary disability insurance at all, maintaining these are purely state functions.

"classifications based upon sex, like classifications based upon race, alienage, and national origin, are inherently suspect and must therefore be subjected to close judicial scrutiny." 411 U.S. at 682, 93 S.Ct. at 1768. Justice Stewart thought the statutory scheme worked an invidious discrimination in violation of the Constitution, while three Justices, concurring in the judgment, found the statutes unconstitutional on the authority of Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). 411 U.S. at 691, 93 S.Ct. 1764.

It is thus somewhat difficult to surmise what the appropriate standard of review in this case should be. At the minimum, it would seem, the state must meet the standard of *Reed*. That is, the state must show that its discriminatory statutory scheme, for unemployment compensation and T.D.I. dependent's allowances was reasonably related, as that term was used in *Reed*, to a legitimate state interest.[6]

The state of Rhode Island has not shown that the sex-based classifications contained in these statutes and in defendant's administrative procedures are reasonably related to a legitimate state interest. Neither of the two justifications offered is constitutionally sufficient.

The first justification, that the statutes simply recognize that in most cases the main support of minor children is the father, is but another phrasing of the argument of administrative convenience. Both *Reed* and *Frontiero* state

that administrative ease cannot justify dissimilar treatment of men and women who are similarly situated. Furthermore, defendant's procedures reflected no concern at all over which parent provided the "main support" of the child. Women had to show they gave total support; men, any support.

The second justification, that the statutes avoid double payments for the same dependents, may be a legitimate interest but it is not reasonably accomplished by these discriminatory means. The state has not shown that the savings resulting from using this method to avoid double payment, that is to grant men benefits automatically or on a showing of any support, is greater than the cost would be to examine all men on the same standard as would be applied to women and then pay benefits only to those actually eligible. See *Frontiero*, 411 U.S. at 677, 93 S.Ct. 1764.

The different standards of proof of dependency applied to women and to men work an invidious discrimination against women. Under defendant's scheme, a woman who contributed 99% of her child's support would be denied the allowance, while a man who contributed 1% of his child's support would be granted the allowance. Thus, women who had assumed the responsibility of providing the majority of a child's support were subjected to the psychological degradation of being told, in effect, that their support was not "real" in this area of the law, while the man's support was "real."[7] If Rhode Island intended

6. As Justice Brennan's opinion in *Frontiero* recognized, the rational basis analysis used in *Reed* was not the "traditional" rational basis test, 411 U.S. at 677, 93 S.Ct. 1764, commonly used with respect to economic regulation, see Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). While the exact content of *Reed's* rational basis test is uncertain, it is a test which does not conform to a simple two-tiered structure for equal protection analysis. See Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1

(1972). This "new" rational basis test appears to demand a greater showing of legitimate state interest than the "traditional" rational basis test, but not so great a showing as to be a compelling state interest. See also discussion in Green v. Waterford Bd. of Education, 473 F.2d 629, 632–634 (2d Cir. 1973).

7. The effect of the discrimination on members of the class who receive unemployment compensation is indicated in part by certain deposition testimony. Vincent Calitri, the Employment Security Research Supervisor, testified that, according to departmental reports, for

to grant dependent's allowances as between the two parents only to the parent who contributed the majority of the support, then it has attempted to do so by impermissibly penalizing female applicants to pay for benefits to male applicants.

■ No justification, except perhaps the insufficient one of administrative ease exists for denying women the dependent's allowances solely on the basis that there is a court order of support. Because there is no similar presumption operating as to men, this presumption violates equal protection. In light of studies showing high rates of noncompliance with support orders,[8] it may also be that this presumption violates the due process clause of the Fourteenth Amendment. Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). Further, the net effect of requiring women to prove dependency was also to delay, in some instances, the first payment to women who were found to be eligible, and thus reduce the amount of allowance they received.

■ In short, this Court finds no justification, reasonable, compelling or otherwise, for the discrimination against women in the statute and in defendant's administrative practices as to dependent's allowances. The result of this discrimination against women was discrimination against the children who were denied benefits because of the sex of the parent who supported them. In granting allowances to dependent children, Rhode Island may not withhold benefits from some of these children on the basis

of an invidiously discriminatory sex classification. Moritz v. Commissioner of Internal Revenue, 469 F.2d 466 (10th Cir. 1972).

In *Frontiero*, the Supreme Court did not invalidate the statutes which presumed dependency for male applicants. It did invalidate the statutes which required females to prove the dependency of their spouses. I shall follow the same course. The clause "provided, however, where the individual making the claim is a woman, the dependency status of such children shall be established to the satisfaction of the director" contained in both R.I.G.L. § 28–44–6(C) and § 28–41–5(C) violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. There remains the question of an award of back payments.

### Retroactive Dependent's Allowances

Defendant has argued that the Eleventh Amendment bars this Court from awarding back payments to plaintiffs and that such an award would, in any event, be an abuse of federal equitable powers. The question is not free from difficulty; the Second Circuit, in Rothstein v. Wyman, 467 F.2d 226 (2d Cir. 1972), and the Seventh Circuit in Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973) cert. granted sub nom. Edelman v. Jordan, 412 U.S. 937, 93 S.Ct. 2776, 37 L.Ed.2d 398 (1973), are in direct conflict on the point.

Though the United States Supreme Court has affirmed summarily several cases awarding retroactive payments,

---

the six months ending June 20, 1972, 11,165 women received at least one payment of unemployment compensation; of that number only 321 received a dependency allowance. The corresponding figures for males were 15,416 who received some payment and of that number 6,460 received a dependency allowance. Calitri Deposition, at 118, 120, q.66, 70, 71. Thus 41.9% of all males received a dependency allowance as compared with 2.8% of all female claimants. There is no breakdown of sex of dependency benefits received under TDI.

Calitri Deposition at 122–123, 125, 126, q.79, 81–86, 97.

8. One study in metropolitan Wisconsin showed an initial rate of compliance with court orders of child support of only 38%, which decreased to a 13% compliance rate after ten years. Eckhardt, Deviance, Visibility & Legal Action: The Duty to Support, 15 Social Problems 470–73 (1968). Another study in Lake County, Indiana showed a compliance rate of only 11%. Foster and Freed, Unequal Protection: Poverty and Family Law, 42 Ind.L.J. 192, 206–207 (1967).

see Sterrett v. Mothers & Childrens Rights Organization, 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972); State Dep't of Health and Rehabilitative Services v. Zarate, 407 U.S. 918, 92 S.Ct. 462, 32 L.Ed.2d 803 (1972); Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970), and affirmed without commenting on the issue in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), it is the belief of one panel in the Second Circuit that these decisions do not have stare decisis effect because they do not discuss the issue. The Second Circuit in *Rothstein* held that the Eleventh Amendment barred retroactive payments.

Since Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been established that the Eleventh Amendment does not prevent a federal court from ordering a state official to cease unconstitutional conduct or conduct in contravention of federal law. The relief issued there was injunctive relief; the language of the opinion supports an interpretation that the Eleventh Amendment does not bar any equitable relief. Inasmuch as retroactive payments may be characterized as restitution rather than damages, it may be that they are permissible under the doctrine of *Ex parte Young*.

In this Circuit, Judge Coffin, writing for a three-judge court in Maine in Stoddard v. Fisher, 330 F.Supp. 566 (D.Me.1971), awarded retroactive AFDC benefits without discussion of an Eleventh Amendment issue. There are numerous lower court opinions awarding such benefits, see e.g. Alexander v. Weaver, 345 F.Supp. 666 (N.D.Ill.1972); Schaak v. Schmidt, 344 F.Supp. 99 (D.Wis.1972); Linnane v. Betit, 331 F.Supp. 868 (D.Vt.1971); and Edelman v. Townsend, 345 F.Supp. 666 (N.D.Ill. 1972), jud. vac. 412 U.S. 914, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973).

The recent Supreme Court decision in Employees of the Department of Public Health & Welfare, State of Missouri v. Department of Public Health & Welfare, State of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), is of little assistance to an Eleventh Amendment problem here. There the Court found that in enacting and amending the Fair Labor Standards Act, Congress did not intend that the state waive its sovereign immunity by operation of facilities covered by the F.L.S.A. The holding in the Missouri case perforce does not answer the Eleventh Amendment issue in our case where portions of the state's unemployment compensation and temporary disability insurance laws are in violation of the Constitution.

Plaintiffs argue that the Eleventh Amendment problem is a false one. They argue that the T.D.I. and unemployment insurance programs do not involve general state revenues, R.I.G.L. § 28–43–3, §§ 28–40–3, 4; that the programs are independently administered by state officials in a trustee capacity, R.I.G.L. § 28–40–3, §§ 28–42–19, .20; and that the state has no liability for payment under them, R.I.G.L. § 28–39–4, § 28–42–18. Because the funds are held in "trust" by the state and payment of back benefits will not come from the state treasury plaintiffs argue, this is not a suit against the state prohibited by the Eleventh Amendment. Cf. Urbano v. Board of Managers of the New Jersey State Prison, 415 F.2d 247 (3rd Cir. 1969) cert. den. 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970); Krisel v. Duran, 258 F.Supp. 845 (S.D.N.Y. 1966), aff'd 386 F.2d 179 (2d Cir. 1967), cert. den. 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968).

No evidence has been presented to the Court on this issue. There is no evidence as to whether there are actually monies in the T.D.I. and unemployment insurance fund to pay back benefits if such are ordered. Nor is there any evidence of who would bear the administrative costs of back payments.

While plaintiffs' statutory analysis has some appeal, the wiser course appears to be to await the Supreme Court's decision in Edelman v. Jordan,

*supra*, for guidance on this issue. Accordingly, resolution of the issue shall be deferred until after the decision in *Edelman, supra*, is rendered.