**Bee I. JOHNSTON, Plaintiff,**

**v.**

**F. E. HODGES, Director, Division of Driver Licensing, Department of Public Safety of the Commonwealth of Kentucky, Defendant.**

**No. 420.**

United States District Court
E. D. Kentucky,
Frankfort Division.
March 25, 1974.

Robert A. Sedler, Lexington, Ky., Donna Morton Maier, Louisville, Ky., for plaintiff.

Mary Jo Arterberry, Dept. of Transp., Frankfort, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

This action challenges the constitutionality of the sex-based mandatory preference embodied in K.R.S. 186.470 (1):

"The application of any minor under the age of eighteen (18) for an operator's license, motorcycle operator's license or any instruction permit shall not be granted unless the application is signed by the father of the applicant, if the father is living and has custody of the applicant, otherwise by the mother or guardian having the custody of the minor. If the minor has no father, mother or guardian, an operator's license or instruction permit shall not be granted . . . unless his application is signed by a person willing to assume the obligation imposed by KRS 186.590 . . . ."

K.R.S. 186.590(1) imputes the negligence of a minor motorist to the person signing the license application.

The facts as alleged in the complaint and admitted in the answer indicate that on November 3, 1972, the plaintiff accompanied her minor son to the Jefferson County Driver Licensing Office for the purpose of signing his application for an instruction permit. The officials in charge declined to accept Johnston's signature when informed that the youth was under the joint custody of his father.

The plaintiff has moved for summary judgment, claiming that K.R.S. 186.-470(1) is unconstitutional insofar as it denies married mothers a coordinate right to assume the responsibility imposed by K.R.S. 186.590(1); the legislation allegedly erects an arbitrary classification between persons similarly situated which fulfills no compelling governmental interest. The parties have been afforded an opportunity for the submission of arguments and the record is before the court for decision.

An inquiry preliminary to the constitutional determination is that of identifying the standard against which this statute must be judged. Depending upon the magnitude of the affected interest, the Supreme Court has through frequent interaction with the Equal Protection Clause formulated two references for weighing classificatory legislation. The "traditional" test is employed where the assailed provision merely specifies different treatment for similar groups:

"The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them."[1]

This rather lenient standard is defensible by the "practical" problems of government which may "justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." Metropolis Theatre Co. v. Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L. Ed. 730 (1913).

1. McDonald v. Board of Election, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969); see also Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Kotch v. Pilot Commissioners, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

The cursory judicial overview sponsored by the traditional test is displaced by a more restrictive scrutiny where legislation treats "fundamental" positions or rights:

"This test, which becomes applicable when a fundamental right of the aggrieved party is at issue or a suspect classification . . . is used, requires that to justify the classification, the state must demonstrate a compelling state interest." Robinson v. Board of Regents of Eastern Kentucky University, 6th Cir., 475 F.2d 707, 710 (1973).

Fundamental rights and protected classes recognized through imposition of this concept include race [2], alienage [3], nationality [4], religion [5], travel [6], procreation [7], and criminal appeals [8].

Until recently, equal protection challenges predicated upon sex-based classifications have been adjudicated by reference to the traditional standard.[9] A more stringent judgmental plateau was reached in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), which condemned an Idaho statute denying letters of estate administration to females where there was an equally qualified male aspirant. Although ostensibly applying the traditional test, the standard recited by the Court was considerably more stringent than that previously utilized:

"A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' . . . The question presented by this case . . . is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced . . . ." Id. at 76, 92 S.Ct. at 254, quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

This attitude was subsequently reflected in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), striking classifications bearing "no significant relationship" to a legitimate objective, and Police Department of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972), questioning "whether there is an appropriate governmental interest suitably furthered by the differential treatment." Most authorities applying this altered standard concluded that the Court was in reality enunciating a new and more circumspect scrutiny of statutory classifications:

"Under this approach courts are constrained to examine the actual empirical relationship between the classification and its lawful object 'rather than accept one hypothetical legislative justification to the exclusion of others . . . .' and also to determine whether there is a less restrictive way to achieve these goals."[10]

2. McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).

3. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

4. Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

5. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

6. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

7. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

8. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

9. See Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908); Robinson v. Board of Regents of Eastern Kentucky University, supra.

10. O'Neill v. Dent, E.D.N.Y., 364 F.Supp. 565, 578 (1973), quoting Boraas v. Village of Belle Terre, 2d Cir., 476 F.2d 806, 815 (1973). Accord, Green v. Waterford Board of Education, 2d Cir., 473 F.2d 629 (1973); but Cf. Wiesenfeld v. Secretary of Health, Education and Welfare, D.N.J., 367 F.Supp. 981 (1973).

However, in Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), a plurality of the Court interpreted Reed as not merely enunciating an intermediate test, but implicitly identifying sex as a "suspect classification" demanding application of the "compelling interest" inquiry:

"What differentiates sex from such nonsuspect statutes as intelligence or physical disability, and aligns it with the recognized suspect criteria, is that the sex characteristic frequently bears no relation to ability to perform or contribute to society. As a result, statutory distinctions between the sexes often have the effect of invidiously relegating the entire class of females to inferior legal status without regard to the actual capabilities of its individual members.

\* \* \* \* \* \*

"With these considerations in mind, we can only conclude that classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subjected to strict judicial scrutiny." Id. at 686–688, 93 S.Ct. at 1770.

The post-Frontiero judicial attitude has variously embraced the "compelling interest" test as the governing standard[11], applied the more traditional measure[12], or declared a choice unnecessary because of the unconstitutionality of the examined statute under either philosophy [13]. This court concludes from an examination of these opinions that sex-based discrimination must survive the "compelling interest" test applied in

Frontiero. It is apparent that the classificatory language in K.R.S. 186.470(1) falls far short of satisfying this demanding standard.

It is initially argued that allowing women to "turn 16 and 17 year old family members loose on the highways" would violate Kentucky legislation preventing wives from acting as sureties; K.R.S. 404.010(2) provides:

"A married woman shall never be the joint maker of a note or a surety on any bond or obligation of another, other than her husband, without the joinder of her husband with her in making such contract unless her separate estate has been set apart for that purpose by mortgage or other conveyance  .  .  .  ."

The defendant erroneously presupposes the applicability of this prohibitory section to the assailed language of K.R.S. 186.470(1). It would be specious to presume that one signing a minor's license application is properly designated a surety. See 50 Am.Jur. "Suretyship", Section 2. Rather, K.R.S. 404.010(2) plainly refers to the assumption of contractual obligations[14], while the liability of a sponsoring adult under K.R.S. 186.470(1) and 186.590 is *ex delicto* in nature.[15] The independent posture of the two statutes is further evinced by the language in K.R.S. 186.470, permitting married women to sign license applications where the father exercises no custody over the minor.

It is also contended that granting wives a concurrent right to sponsor license applicants would unfairly obligate a potentially unwilling father under the

11. Ballard v. Laird, S.D.Cal., 360 F.Supp. 643 (1973) ; O'Neill v. Dent, supra note 10; Stern v. Massachusetts Indemnity and Life Insurance Co., E.D.Pa., 365 F.Supp. 433 (1973).

12. Aiello v. Hansen, N.D.Cal., 359 F.Supp. 792 (1973) ; Magill v. Avonworth Baseball Conference, W.D.Pa., 364 F.Supp. 1212 (1973) ; Ritacco v. Norwin School District, W.D.Pa., 361 F.Supp. 930 (1973).

13. Bowen v. Hackett, D.R.I., 361 F.Supp. 854 (1973) ; Healy v. Edwards, E.D.La., 363

F.Supp. 1110 (1973) ; Smith v. City of East Cleveland, N.D.Ohio, 363 F.Supp. 1131 (1973).

14. See Note, 33 Ky.Law Journal 66 (1944).

15. Robinson v. Hardaway, 293 Ky. 627, 169 S.W.2d 823 (1943) ; Hickman v. Tullos, N. D.Ala., 121 F.Supp. 152 (1954) ; Annot., 26 A.L.R.2d 1320. K.R.S. 404.060(1) states that "(a) married woman may sue, and be sued, as a single woman."

family purpose doctrine; this argument evokes a spectre inconsistent with the philosophy underlying the doctrine. First, liability under the family purpose doctrine is attributed to the party who owns or controls the subject vehicle rather than the individual who supports the family:

> "We have never held that the father is liable merely because he is the head of the family . . . . In Steele v. Age's Adm'x, 233 Ky. 714, 26 S.W.2d 563, it was held that the family purpose doctrine was applicable to the mother where she, though married, owned the car and maintained it for general use, pleasure, and convenience of members of her family." McNamara v. Prather, 277 Ky. 754, 756, 127 S.W.2d 160, 161 (1939).

Accord, Richardson v. True, Ky., 259 S.W.2d 70 (1953); Wallace v. Hall, 235 Ky. 749, 32 S.W.2d 324 (1930). Thus, the onus of unwanted responsibility is no less profound where a husband signs the license application without the consent of his wife. Even if the automobile is owned by the husband, the court is aware of no authority holding that the signature on a license application is alone sufficient to invoke the family purpose doctrine; rather, liability under this theory is dependent upon the tortfeasor's use of the automobile with the express or implied permission of its owner. Daniel v. Patrick, Ky., 333 S.W.2d 504 (1960); Taylor v. Rawls, Ky., 274 S.W.2d 50 (1955); Richardson v. True, supra. There is no reason to presume that liability would attach where a nonsignatory expressly forbids use of his automobile by a minor driver. See McGeehan v. Schiavello, Del.Supr., 265 A.2d 24 (1970).

The underlying tenor of the defendant's arguments predicates the validity of K.R.S. 186.470(1) upon the proposition that the inadequate financial responsibility of women as a class renders them unacceptable as sponsors. The earlier impression that "(t)he natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of civil life. . . ."[16], has given way to increasing wealth in this segment of the population. "Forty percent of the American work force is female. Over 57% of all American women between the ages of 20 and 24, and 45% of those between 25 and 34, are in the wage earning work force." Healy v. Edwards, E.D.La., supra note 13, at 1114 of 363 F.Supp. (1973). Further, the supposed indigence among females could not have constituted the primary motivation for this classification since women are permitted to sign the applications in the event the father is dead or without custody of the minor. The only remaining defense is that the mandatory statutory inference avoids the administrative hardship attendant to ascertaining the financial responsibility of each aspirant; such bureaucratic facilitation has uniformly been held insufficient to justify sex-based discrimination:

> "(T)he Government concedes that the differential treatment accorded men and women . . . serves no purpose other than mere 'administrative convenience.' . . . (T)he Government maintains that, as an empirical matter, wives in our society frequently are dependent upon their husbands . . . . Thus, the Government argues that Congress might reasonably have concluded that it would be both cheaper and easier simply conclusively to presume that wives of male members are financially dependent upon their husbands . . . .
>
> \*   \*   \*   \*   \*   \*
>
> "(O)ur prior decisions make clear that, although efficacious administration of governmental programs is not without some importance, 'the Constitution recognizes higher values than speed and efficiency.' . . . And

---

16. Bradwell v. State of Illinois, 16 Wall. 130, 141, 21 L.Ed. 442 (1872) (Bradley, J., concurring).

when we enter the realm of 'strict judicial scrutiny,' there can be no doubt that 'administrative convenience' is not a shibboleth, the mere recitation of which dictates constitutionality." Frontiero v. Richardson, supra, 411 U.S. at 688–690, 93 S.Ct. at 1771–1772.[17]

■ On November 21, 1973, this challenged statutory classification was upheld in Ogren v. Miller (three-judge) W.D.Ky., No. 7617–B (1973). That court reasoned that the underlying interests did not attain constitutional magnitude:

"(T)he minor applicant has no constitutional right to operate a motor vehicle, the privilege to do so being derived solely from the state statute. . . . The Commonwealth, in the exercise of its legislative wisdom, through its police powers, can delineate any reasonable limitations it wishes in bestowing the privilege.

"A minor applicant could not properly test the constitutionality of the regulation in controversy; thus, it follows that a vicarious plaintiff could not bring suit to redress the alleged infringement." Id.

This court must respectfully disagree with the reasoning employed by the three-judge panel.[18] First, Ogren applied the repudiated "traditional" test. Second, that opinion incorrectly predicated the assertibility of a constitutional claim upon the classification of the right to operate a motor vehicle as a "privilege". It is well-settled that an improperly withheld status may not be immunized from constitutional challenge by its classification as a "privilege". Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Stern v. Massachusetts Indemnity and Life Insurance Company, supra note 11, at 440–441 of 365 F.Supp. Such a denomination does not relieve the state from the obligations of reasonableness[19] and nonarbitrary treatment.[20]

■ ■ The plaintiff correctly contends that the obvious unconstitutionality of the preference embodied in K.R.S. 186.470(1) need not be adjudicated by a three-judge court: "no three-judge court need be requested if there is no substantiality to the claim that a state statute on its face is not unconstitutional." Doe v. Israel, 1st Cir., 482 F.2d 156, 158 (1973); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Turner v. City of Memphis, 369 U.S. 350, 353, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962). Further, the court has determined that injunctive relief is unnecessary in the case at bar. 28 U.S.C. § 2281; see Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Whatley v. Clark, 5th Cir., 482 F.2d 1230 (1973); Triple A Realty, Inc. v. Florida Real Estate Commission, 5th Cir., 468 F.2d 245 (1972). The court finds that K.R.S. 186.470(1) violates the constitutional rights of the plaintiff and is, therefore, declared to be unconstitutional within the meaning of the Constitution of the United States. The decision in this case is a declaration of the rights of the plaintiff and this memorandum opinion is a final order concluding the litigation in this court. The plaintiff is hereby given judgment for her costs herein expended.

17. Accord, Reed v. Reed, supra; Shapiro v. Thompson, supra note 6; Green v. Waterford Board of Education, supra note 10; Bowen v. Hackett, supra note 13.

18. "The decision of a three-judge court is entitled to no more weight than any other district court decision." Farley v. Farley, 3d Cir., 481 F.2d 1009, 1012 (1973).

19. Commonwealth v. Mitchell, Ky., 355 S.W.2d 686, 688 (1962); Sturgill v. Beard, Ky., 303 S.W.2d 908, 909 (1957); Ballow v. Reeves, Ky., 238 S.W.2d 141, 142 (1951).

20. 7 Am.Jur.2d "Automobiles and Highway Traffic", Section 96.