RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CHRISTOPHER SULLIVAN; NATHAN HASKELL; WILLIAM GENTRY,

        *Plaintiffs-Appellants*,

    *v.*

SAM BENNINGFIELD; ODDIE SHOUPE,

        *Defendants-Appellees*.

> No. 18-5643

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 2:17-cv-00052—Waverly D. Crenshaw, Jr., District Judge.

Argued:  January 15, 2019

Decided and Filed:  April 4, 2019

Before:  COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Daniel A. Horwitz, LAW OFFICE OF DANIEL A. HORWITZ, Nashville, Tennessee, for Appellants.  Michael T. Schmitt, ORTALE KELLEY LAW FIRM, Nashville, Tennessee, for Appellees.  **ON BRIEF:**  Daniel A. Horwitz, LAW OFFICE OF DANIEL A. HORWITZ, Nashville, Tennessee, for Appellants.  Michael T. Schmitt, ORTALE KELLEY LAW FIRM, Nashville, Tennessee, for Appellees.

    COLE, C.J., delivered the opinion of the court in which MOORE, J., joined. SUHRHEINRICH, J. (pg. 14), delivered a separate dissenting opinion.

---

**OPINION**

---

COLE, Chief Judge.  In May 2017, Judge Sam Benningfield issued an order offering a 30-day sentencing credit to inmates in White County, Tennessee.  There was one condition:  to obtain the credit, inmates had to submit to sterilization.  After public outcry about the sterilization-for-sentencing-credits program, Judge Benningfield issued a second order declaring that inmates could no longer enroll in the program, followed by a third order clarifying which of the inmates who initially enrolled could still receive the sentencing credit.  Within months, the Tennessee Legislature passed Senate Bill 2133, which made it illegal for courts to make sentencing determinations based on a defendant's willingness to consent to sterilization.

Christopher Sullivan, Nathan Haskell, and William Gentry—inmates who refused to submit to a vasectomy and were consequently denied the sentencing credit that was awarded to inmates who underwent sterilization—challenged Judge Benningfield's orders under the Equal Protection Clause, arguing that the orders subjected inmates to differential treatment on the basis of their procreative rights and their sex.  The district court found that the claims were moot in light of the passage of Senate Bill 2133 and Judge Benningfield's second and third orders.  Because none of those subsequent developments in the law ended the differential treatment that plaintiffs challenge, we reverse and remand for consideration of plaintiffs' claims on the merits.

## I. BACKGROUND

On May 15, 2017, White County General Sessions Judge Sam Benningfield entered a standing order, which stated:

> For good cause shown including judicial economy and the administration of justice, it is **ORDERED** any White County inmate serving a sentence for the General Sessions Court who satisfactorily completes the State of Tennessee, Department of Health Neonatal Syndrome Education (NAS) Program be given two (2) days credit toward completion of his/her jail sentence.  Any such female inmate who receives the free [N]explanon implant or any such male inmate who has the free vasectomy as a result thereof shall be given an additional thirty (30) days credit toward completion of his/her jail sentence.

(Initial Order, R. 13-1 (emphasis in original).)   After Judge Benningfield issued this order, Plaintiffs allege that "dozens of White County inmates"—including Plaintiff William Gentry—"agreed to submit to surgical sterilization in order to reduce the length of their respective jail sentences." (Am. Compl., R. 13, PageID 133–35.)  Both parties agree that Judge Benningfield's co-defendant, White County Sheriff Oddie Shoupe, enforced this order by reducing the sentences of inmates who underwent sterilization.  It is uncontested that multiple inmates were sterilized and received a sentence credit in line with Judge Benningfield's order.

The press covered White County's sterilization-for-sentencing-credits program on July 19, 2017, after the White County District Attorney expressed concerns about the program to a reporter.   Plaintiffs allege that "intense national outrage and widespread condemnation" followed. (*Id.* at PageID 131, 135.)  Shortly thereafter, on July 26, 2017, Judge Benningfield issued a second order, which stated:

> Whereas the State of Tennessee, Department of Health has indicated to the court through its representative that it will no longer offer free vasectomies to White County inmates serving a sentence for the General Sessions Court and will not provide the free [N]explanon implant to White County inmates serving a sentence for the General Sessions Court who receives any credit toward the completion of their jail sentence as a result thereof; it is hereby **ORDERED** the previous order i[n] this regard is hereby rescinded.
>
> Those inmates who have demonstrated to the court their desire to improve their situations and take serious and considered steps toward their rehabilitation by having the procedures or agreeing to have same will not be denied the credit.  You will be awarded the 30 days jail credit promised whether you ultimately receive the procedures or not.  All inmates shall remain eligible for the two (2) days credit for completing the State of Tennessee, Department of Health Neonatal Syndrome Education (NAS) Program satisfactorily.

(Rescinding Order, R. 13-2 (emphasis in original).)  In this second order, Judge Benningfield attempted to rescind the initial standing order by awarding sentencing credits to all inmates who offered to undergo sterilization, regardless of whether those inmates were ultimately sterilized.  But this order took no action with respect to inmates who had refused the offer to undergo sterilization in exchange for sentencing credits.  Consequently, the second order ensured that inmates who had agreed to submit to sterilization would still receive a 30-day sentence reduction that was denied to inmates who had maintained their unwillingness to undergo sterilization.

Two of those inmates who had refused to undergo sterilization were Plaintiffs Christopher Sullivan and Nathan Haskell. At the time the first and second orders were issued, Sullivan and Haskell were both inmates in the White County jail. Neither accepted Judge Benningfield's offer to undergo sterilization in exchange for sentencing credits, and neither received a sentencing credit. After the second order was issued, Plaintiff William Gentry also opted not to obtain a vasectomy. Despite the second order's promise that inmates who initially signed up to undergo sterilization would receive the credit "whether [they] ultimately receive[d] the procedures or not," Gentry never obtained the sentencing credit, either. (*Id.*)

In August 2017, Sullivan filed a complaint in the Chancery Court in White County, Tennessee, alleging that Benningfield and Shoupe (collectively, "Defendants") deprived him of his Fourteenth Amendment rights by issuing and enforcing the sterilization-for-sentencing-credit orders. Defendants removed the lawsuit to federal court, and Sullivan filed an amended complaint, adding Gentry and Haskell as plaintiffs. The amended complaint sought declaratory and injunctive relief, the latter of which requested that Sullivan, Haskell, and Gentry (collectively, "Plaintiffs") receive the same 30-day sentencing credit that had been afforded to similarly-situated inmates who relinquished their procreative rights. Defendants filed a motion to dismiss, and Plaintiffs filed a motion for partial summary judgment.

While litigation was pending, Judge Benningfield entered a third order on November 9, 2017, which stated:

> Whereas, on May 15, 2017, this Court entered a Standing Order, which applied only to White County inmates who were serving a sentence for the General Sessions Court. The Standing Order gave two days credit toward the [sentence] of any eligible inmate who completed the State of Tennessee, Department of Health's Neonatal Syndrome Education (NAS) Program. Additionally, the Standing Order offered a 30-day credit toward the completion of an eligible inmate's jail sentence if that inmate received the free [N]explanon implant or vasectomy offered by the Tennessee Department of Health.

> Whereas, on July 26, 2017, this Court entered an Order Rescinding Previous Standing Order. Specifically, the Order Rescinding Previous Standing Order explained that this Court would no longer offer a 30-day credit toward the completion of an eligible inmate's jail sentence if that inmate received the free nexplanon implant or vasectomy offered by the Tennessee Department of Health. The Order Rescinding Previous Standing Order informed those eligible inmates

that had signed up to receive a free [N]explanon implant or vasectomy before the entry of the Order Rescinding Previous Standing Order that they would still receive the 30-day credit toward the completion of their sentence, regardless of whether the[y] actually went through with receiving the procedure. It has now come to this Court's attention that the Order Rescinding Previous Standing Order has caused some confusion, specifically whether an inmate can currently promise to have one of the available procedure and still receive a 30-day jail sentence credit and this Court now enters this Order to clarify the Court's intent as to how the Order Rescinding Previous Standing Order was intended to be, and was in fact, applied.

It is hereby clarified that the Order Rescinding Previous Standing Order was not intended to extend the 30-day jail sentence credit for anyone who promised to undergo these surgical procedures **after** the entry of the Order Rescinding Previous Standing Order; rather, the Order Rescinding Previous Standing Order was intended only to insure that the eligible inmates that had already complied with the Standing Order of May 15, 2017 (either by having the procedure or signing up with the intent to have the procedure) would receive the promised benefit regardless of whether those individuals ultimately had the procedure.

(Clarifying Order, R. 42-1, PageID 500 (emphasis in original).) This third order clarified that, even though the second order purported to discontinue the sterilization-for-sentencing-credits program, inmates who opted to undergo sterilization *before* the second order was issued were still eligible to receive the sentencing credit.

On May 1, 2018, the Tennessee Legislature passed Senate Bill 2133, which enacted a new law forbidding courts from making sentencing determinations based upon a defendant's willingness to consent to sterilization. The law states in relevant part that a "sentencing court shall not make a sentencing determination that is based in whole or in part on the defendant's consent or refusal to consent to any form of temporary or permanent birth control, sterilization, or family planning services, regardless of whether the defendant's consent is voluntarily given." Tenn. Code Ann. § 40-35-217(c); *see also* Tenn. S.B. 2133, R. 50-2, PageID 557.

On May 26, 2017, Defendants filed a motion to supplement their motion to dismiss, claiming that Tennessee's passage of this new law rendered the controversy moot. On June 18, 2018, the district court granted Defendants' motions and dismissed all of Plaintiffs' claims and pending motions for summary judgment as moot. Plaintiffs now appeal the district court's mootness determination.

## II. ANALYSIS

Defendants maintain this case is moot, and they also contend that Plaintiffs have no standing to sue. This court reviews questions of standing and mootness de novo. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 523 (6th Cir. 2001).

Although the case-or-controversy requirement of Article III, § 2 of the Constitution "underpins both our standing and our mootness jurisprudence," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000), standing and mootness inquiries diverge in several important respects, one of which is timing. Whether a plaintiff has standing to sue is "determined as of the time the complaint is filed." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 524. If a plaintiff overcomes the standing hurdle at the time of filing, the doctrine of mootness then "requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). We address the standing and mootness doctrines in turn.

### A. Standing

To establish standing under Article III, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "In the context of claims for injunctive or declaratory relief," the threatened injury in fact must be "concrete and particularized," as well as "actual and imminent, not conjectural or hypothetical[.]" *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. 2017) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Past exposure to illegal conduct" is insufficient to demonstrate an injury in fact that warrants declaratory or injunctive relief unless the past injury is accompanied by "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001).

Defendants dispute that Plaintiffs can satisfy the first element: an injury in fact. Defendants argue that there is no constitutional right to a sentencing credit, *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992), so "the denial of a sentence credit, by itself, cannot be the

basis for standing's injury-in-fact requirement." (Appellee Br. 9.) But "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," the "injury in fact" at issue is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) [hereinafter "*NFAGC*"]). Thus, Plaintiffs need not show the denial of an independent right to make out an Article III injury in fact. *Turner v. Fouche*, 396 U.S. 346, 362–63 (1970) (finding that, although appellants had no right to be appointed to board of education, the Equal Protection Clause guaranteed that the "State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees").

Defendants next argue that the types of differential treatment alleged do not violate the Equal Protection Clause and, accordingly, cannot constitute injuries in fact. Because the Equal Protection Clause "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference," *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011), an allegation that plaintiffs were subjected to differential treatment in one of these impermissible ways amounts to a cognizable injury in fact, so long as the differential treatment was either ongoing or accompanied by continuing adverse effects at the time the complaint was filed. *O'Shea*, 414 U.S. at 495–96. Plaintiffs have identified two potential injuries in fact: differential treatment that burdens the fundamental right to procreate, and differential treatment based on sex.

Plaintiffs first argue that Judge Benningfield's order called for differential treatment that impermissibly burdened the fundamental right to procreate, because it awarded benefits to only those inmates who agreed to submit to sterilization, not those who refused to relinquish their procreative rights. Both this court and the Supreme Court have acknowledged that the right to procreate has achieved the status of a fundamental right for the purposes of equal protection challenges. *Robinson v. Bd. of Regents of E. Ky. Univ.*, 475 F.2d 707, 710 (6th Cir. 1973) (citing *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942)). Plaintiffs allege that Judge

Benningfield specifically ordered that inmates would be awarded a 30-day sentencing credit in exchange for their agreement to undergo sterilization. They further allege that the same credit was not available to inmates who chose not to forfeit their procreative rights. Requiring inmates to waive a fundamental right to obtain a government benefit impermissibly burdens that right. *Fouche*, 396 U.S. at 362–63.

Plaintiffs next argue that Judge Benningfield's order called for differential treatment that targeted a suspect class. The order made an express distinction between the choice that men and women faced. Men who wanted the sentencing credit would have to obtain a vasectomy, which Plaintiffs argue is a "potentially irreversible" form of sterilization. (Appellant Br. 14.) In contrast, women who wanted the sentencing credit would have to obtain a Nexplanon implant, which Plaintiffs argue is a "surgically inserted but removable birth control" option. (*Id.*) Plaintiffs' allegation that vasectomies pose more severe risks than Nexplanon implants finds some support in the number of inmates who volunteered to submit to the respective procedures: as Defendants conceded at oral argument, fewer than five men signed up for vasectomies (and zero men ultimately obtained vasectomies), while about 40 women ultimately received Nexplanon implants through the sterilization-for-sentencing-credits program. (Oral Arg. 19:31–20:05.) Taken together, the evidence and allegations before this court confirm that Plaintiffs adequately alleged that Defendants "erect[ed] a barrier that ma[de] it more difficult for members of one group"—male inmates—"to obtain a benefit"—sentencing credits—"than it [wa]s for members of another group"—female inmates. *NFAGC*, 508 U.S. at 666.

Finally, standing requires that Plaintiffs alleged these injuries in fact were ongoing or had "continuing, present adverse effects" at the time they filed their complaint. *O'Shea*, 414 U.S. at 495–96; *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 524. Plaintiffs adequately alleged that the differential treatment that burdened the exercise of a fundamental right was ongoing at the time the complaint was filed, as they argued that Judge Benningfield's second order continued to permit inmates who initially elected to waive their procreative rights to receive the 30-day sentencing credit without extending the same benefit to those who refused to waive their rights. Plaintiffs also alleged that, by continuing to award the sentencing credit to only those inmates who opted to waive their procreative rights under the terms of the first order, the second order

effectively froze the inmates' initial choices in place.  As a result, the current distinction between inmates who will receive the sentencing credit and those who will not is still tainted by any impermissible sex discrimination that the first order contained.  So, if the initial choice contained a heightened barrier to male inmates, as Plaintiffs allege, the current distribution of sentencing credits constitutes a continuing, adverse effect of that injury.  Therefore, Plaintiffs adequately alleged that the sex-based differential treatment had "continuing, present adverse effects" at the time they filed their complaint as well.  *O'Shea*, 414 U.S. at 495–96.

We note that Defendants have not made any arguments contesting causation or redressability, and that appears to be with good reason.  The denial of differential treatment is fairly traceable to Judge Benningfield's order, which set the terms of the sterilization-for-sentencing-credit program, and at the time the complaint was filed, the differential treatment that allegedly burdened the fundamental right to procreate and imposed a heightened barrier for male inmates to receive the sentencing credit would have been redressable by injunctive relief awarding the credit to Sullivan, Haskell, and Gentry.  *See Heckler v. Mathews*, 465 U.S. 728, 740 (1984).  Thus, we find Plaintiffs had standing to bring both claims.

## B. Mootness

The mootness doctrine, in contrast to our standing jurisprudence, "requires that there be a live case or controversy at the time that a federal court decides the case." *Burke*, 479 U.S. at 363.  "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (internal citations omitted).

Ultimately, the "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (en banc) (internal quotations and citations omitted).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S.

85, 91 (2013) (internal citations omitted). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531.

Defendants first argue that, even if Plaintiffs initially had standing to bring these claims, the claims are now moot, because the challenged order has been rescinded, and Tennessee has passed a new law making the challenged practice illegal. Defendants argue that these changes in the law, as well as the public reprimand Judge Benningfield received due to his issuance of the orders, are sufficient to show that Defendants have stopped engaging in the conduct at issue and there is no reasonable expectation they will repeat it.

A defendant's voluntary cessation of a challenged practice moots a case only in the "rare instance" where "subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008); *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 530–31 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Defendants bear a "heavy" burden to demonstrate mootness in the context of voluntary cessation. *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003). Still, this court has noted that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003).

Repeal of a challenged law can, in some cases, render a case or controversy moot, *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997), but a case or controversy "does not cease to exist merely by virtue of a change in the applicable law." *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016). "[W]here the changes in the law arguably do not remove the harm or threatened harm underlying the dispute, 'the case remains alive and suitable for judicial determination.'" *Cam I, Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006) (internal citations omitted). Put another way, before voluntary cessation of a practice could ever moot a claim, the challenged practice must have *actually ceased*. *See Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531. Thus, the effects of the legal changes that took place after the complaint was filed are paramount in determining whether Plaintiffs' claims are moot.

Judge Benningfield's third order stated that "eligible inmates that had already complied with the Standing Order of May 15, 2017 (either by having the procedure or signing up with the intent to have the procedure) would receive the promised benefit regardless of whether those individuals ultimately had the procedure." (Clarifying Order, R. 42-1, PageID 500.)  Because the third order continues to extend the credit to "eligible" inmates, but not to those who never agreed to forego their procreative rights, this order did not end the challenged differential treatment.[1]  At oral argument, Defendants confirmed that anyone who initially agreed to undergo sterilization would still be eligible to receive a 30-day credit under the terms of the second and third orders, and that inmates were still requesting credits from Judge Benningfield after the third order was issued in November 2017.  Although this court treats government actors with "more solicitude" than private parties in analyzing whether a voluntarily ceased practice is likely to recur, *Ammex*, 351 F.3d at 705, our more favorable standard for government actors cannot dispense with an allegation that Defendants did not in fact cease their challenged conduct in the first instance.[2]  *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531.

Senate Bill 2133—enacted as Tenn. Code Ann. § 40-35-217—fares no better at extinguishing the challenged practice.  The new law declares that judges cannot consider sterilization in any sentencing determinations going forward, which ensures that future inmates will not endure this allegedly unconstitutional practice.  But the new law had no impact on Plaintiffs, as the statute impacts only sentences imposed *after* the effective date of the statute.  Thus, the statute fails to stop the differential treatment Plaintiffs continue to suffer:  not receiving the sentencing credit that was awarded to inmates who forfeited their fundamental right to

---

[1]Although the order promised that inmates like Gentry who "sign[ed] up with the intent to have the procedure" but never "ultimately had the procedure" would receive the credit and be treated the same as inmates who were actually sterilized (Clarifying Order, R. 42-1, PageID 500), Plaintiffs allege Gentry never received his sentencing credit.  Thus, even in direct contravention of Judge Benningfield's third order, Plaintiffs argue that the challenged practice of providing sentencing credits to those who underwent sterilization while denying them to inmates who did not forfeit their procreative rights continued.

[2]We also note that, even if the program had ceased, Defendants failed to make "absolutely clear" they would refrain from engaging in this conduct in the future.  To the contrary, they went as far as to call the program a "good deed" in oral argument before this court. (Oral Arg. 25:11–25:28 ("A lot of them are addicted to drugs, a lot of them . . . have unwanted children—the judge was talking about seeing these families come time and time again before him and he was really trying to do something that was well.  No good deed goes unpunished.").)

procreate. Thus, neither of the changes to the law has ceased the allegedly unconstitutional differential treatment that any of the Plaintiffs faced, and they do not moot Plaintiffs' claims.

Defendants next argue that Plaintiffs' claims are moot because all three plaintiffs have been released from the White County jail in the time since this lawsuit was filed, and that prospective relief cannot redress claims challenging conditions of confinement if Plaintiffs are no longer incarcerated. For example, Defendants press that courts have found it would be meaningless to order prison officials to stop searching an inmate's mail or to allow an inmate to attend a religious service after the inmate has already been released from detention. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Plaintiffs' claims are distinguishable from those extinguished in the cases cited above, because they do not challenge conditions of confinement; they challenge the differential treatment with respect to the distribution of *sentencing credits*. Still, the question remains whether Plaintiffs' release from jail similarly "deprive[s] the court of the ability to give meaningful relief." *Ailor*, 368 F.3d at 596.

Plaintiffs argue that awarding them the 30-day sentencing credit would still provide meaningful relief, because the credit would impact collateral rights under state law that turn on the date their sentences were terminated.[3] Even where a plaintiff's sentence has expired, the Supreme Court has recognized that challenges that impact the length of an inmate's sentence can still present a live case or controversy, so long as the former inmate identifies an ongoing collateral consequence that can be redressed by the relief sought. *Pollard v. United States*, 352 U.S. 354, 358 (1957) (finding that the "possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits" of plaintiff's challenge to his sentence, even though plaintiff had already been released from

---

[3]Plaintiffs also contend that at least one of their sentences has not yet expired: although William Gentry was released from jail, he is serving the remainder of his sentence on probation under the supervision of Community Corrections. "As such, Plaintiff Gentry would still benefit from a 30-day sentence credit even after his release, because such a credit would reduce the length of time that he has to spend under state custodial control," which would still constitute meaningful relief. (Reply Br. 23 (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)).) If Gentry is still serving his sentence, we agree that awarding him the credit he requests and thereby reducing his sentence by 30 days would provide meaningful relief. *Ailor*, 368 F.3d at 596.

prison); *Fiswick v. United States*, 329 U.S. 211, 220–21 (1946) (finding case was not mooted by expiration of sentence where plaintiff could show "under either state or federal law further penalties or disabilities can be imposed on him as a result of the judgment which has now been satisfied"); *cf. United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (finding claim moot where plaintiff "was no longer subject to the sex-offender-registration conditions that he sought to challenge on appeal," and plaintiff failed to show "some ongoing 'collateral consequenc[e]' that is 'traceable' to the challenged portion of the sentence and 'likely to be redressed by a favorable judicial decision'"); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit [challenging the plaintiff's parole revocation] is to be maintained.").

While Defendants cannot give Plaintiffs back the 30 extra days they served as compared to inmates who opted to undergo sterilization, Plaintiffs have alleged that awarding them the 30-day sentencing credit would affect other collateral consequences related to sentencing. Concretely, Plaintiffs argue that Tennessee law permits non-violent offenders to petition for expungement five years after the sentence termination date, Tenn. Code Ann. § 40-32-101(g)(2)(B), such that retroactive application of the sentencing credit would allow them to pursue expungement 30 days sooner. Because Plaintiffs have alleged that the 30-day sentencing credit would accelerate their access to expungement, they have shown that the "the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson*, 119 F.3d at 458. Thus, Plaintiffs' release from jail does not moot their claims.

## III. CONCLUSION

We reverse the district court's determination that Plaintiffs' claims were moot and remand for consideration of their claims on the merits.

---

**DISSENT**

---

SUHRHEINRICH, J. dissenting:  None of the Plaintiffs suffered any injury in this case. Plaintiffs' sentences were not increased; rather they served their sentences as originally ordered. Being offered contraceptive services, even being encouraged to accept free contraceptive services, is not an injury in fact for purposes of standing.  Plaintiffs did not receive the vasectomies and their right to procreate has not been hindered in any way. *Cf. Harris v. McRae*, 448 U.S. 297 (1980) (explaining that even when the government favors childbirth over abortion by subsidizing one decision over the other; such regulation does not impinge on the constitutional freedom to make those decisions because it imposed no restrictions on access to abortions); *Maher v. Roe*, 432 U.S. 464, 474 (1977) ("The State may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there.").

Plaintiffs also did not suffer any "differential treatment." *See Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) ("The threshold element of an equal protection claim is disparate treatment . . . ."). Every inmate was received the same offer.  The fact that two of the three Plaintiffs exercised their right to refuse the offer and preserve their right to procreate actually underscores the point. *Cf. Corbitt v. New Jersey*, 439 U.S. 212 (1978) (criminal defendants who refused plea deals to protect their right to trial by jury thereby facing a mandatory life sentence if convicted, rather than pleading guilty in return for a lesser sentence, were not denied equal protection because "[a]ll . . . defendants [were] given the same choice").

For these reasons, I would affirm the district court's conclusion that the Plaintiffs' lacked standing.  I therefore respectfully dissent.