**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0308n.06

Case No. 19-3748

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 29, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| COLUMBIA MHC EAST, LLC, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| MELODY STEWART, et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | **OPINION** |
| | ) | |

BEFORE: BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Parties who lose in state court typically try to vindicate their interests through the appeal process. And Plaintiffs here pursued that route. But Plaintiffs went one step further—they sued again, this time in federal court, naming individual state court judges and others as defendants. If that seems unusual, it is. Federal courts don't second guess state court decisions by way of lawsuits against individual judges.

This case grows out of an age-old story: Borrowers borrow and borrowers default. The lender then sues—in this case, in Ohio state court—and borrowers lose. The lender in this case also moved the state court to place the mortgaged property and a wastewater treatment plant on the property in receivership. One of the owners of that plant, Columbia MHC East, LLC (Columbia East), opposed that motion but lost. Columbia East unsuccessfully appealed to the Ohio court of appeals and the Ohio Supreme Court.

So the plant's owners—Columbia East, its manager (Kenneth Burnham), and Columbia Park Water & Sewer System (CPWSS, "a d/b/a of" Columbia East) (collectively, Plaintiffs)—came to federal court and sued various individuals and entities involved in the motion's adjudication. (R. 1, Compl., PageID, 2.) But they lost. They now appeal and ask us to reverse the district court's dismissal of their claims and remand the case for further proceedings. But events after the district court's decision render Plaintiffs' claims moot. So we DISMISS the case for lack of jurisdiction.

## I.

This case began when two entities not parties to this suit (Borrowers) executed a commercial loan with U.S. Bank National Association. They secured that loan with a mortgage in part on real estate, fixtures, and personal property situated on and in connection with Columbia Park Mobile Home Community, a senior living community in Olmsted Township, Ohio (Columbia Park). But according to Columbia East, the mortgage did "not encumber[]" a wastewater treatment plant and waterworks system on the property that services Columbia Park's residents (WWTP). *U.S. Bank Nat'l Ass'n v. Columbia Park E. MHP, L.L.C.*, 128 N.E.3d 793, 798 (Ohio Ct. App. 2018).

Borrowers unfortunately defaulted on that loan. So U.S. Bank sued Borrowers in Ohio state court. *Id.* at 795–96. Given WWTP's significance to and physical location on the mortgaged property, U.S. Bank also moved the state court to appoint a receiver for that facility. *Id.* at 795–96, 798; *U.S. Bank Nat'l Ass'n v. Columbia Park E. MHP, LLC*, No. CV-17-887110 (Ohio Ct. Com. Pl. Mar. 1, 2018) (Receivership Order), *aff'd*, 128 N.E.3d 793. Enter Columbia East—one of WWTP's three owners—who opposed U.S. Bank's motion. Columbia East argued that "the

appointment of a receiver was unnecessary" because, among other reasons, Columbia East "had secured a buyer for the property[.]" *Columbia Park E.*, 128 N.E.3d at 796.

But the state court sided with U.S. Bank, appointed M. Shapiro Real Estate Group Ohio, LLC (Shapiro) as the Receiver for WWTP, and authorized and directed Shapiro to "take immediate possession and full control of" that facility. Receivership Order at 1–2. So Columbia East appealed. The state appeals court found WWTP's facilities "permanently affixed to the mortgaged property[.]" *Columbia Park E.*, 128 N.E.3d at 799. It also found that the mortgage's terms, Ohio case law, and the circumstances "show that . . . [WWTP] exists solely to serve the" mortgaged property. *Id.* at 798–99. Given its findings and even though U.S. Bank "d[id] not deny" that the mortgage did "not encumber[]" WWTP, the court agreed with the trial court and found WWTP a "fixture" of the mortgaged property. *Id.* at 798–99. And the court affirmed the trial court's judgment. *Id.* at 800. The state Supreme Court refused to accept the appeal. *See U.S. Bank Nat'l Ass'n v. Columbia Park E. MHP, L.L.C.*, 120 N.E.3d 868 (Ohio 2019) (table).

After the state court issued its Receivership Order, Columbia East also submitted a rate increase application to the Public Utilities Commission of Ohio (PUCO)—the state agency that regulates CPWSS's activities. (Appellant's Br. at 3 (explaining that Columbia East "s[ought] a rate hike to repair the system").) But given the state court's order, PUCO granted a motion filed by U.S. Bank and Shapiro to intervene in the ongoing regulatory action. PUCO then dismissed the pending rate increase applications on a motion filed by U.S. Bank and Shapiro. And Columbia East petitioned the state Supreme Court to review that decision but ultimately applied to dismiss that petition. *See In re Columbia MHC E., L.L.C.*, 137 N.E.3d 111 (Ohio 2019) (table) (granting the application to dismiss that petition).

Undeterred and unhappy with the consequences of the Receivership Order and PUCO's decision, Plaintiffs sought relief in federal court. They named PUCO, U.S. Bank, and Shapiro as defendants. They also sued the three Ohio appellate judges who adjudicated the Receivership Order appeal (Justice Melody J. Stewart, Judge Tim McCormack, and Judge Patricia Ann Blackmon) in their official capacities.

Before the federal court, Plaintiffs asked only for declaratory judgment and injunctive relief. They asked the district court to enter judgment (1) declaring that defendants' "acts . . . violat[ed] [] Plaintiffs' constitutional rights to compensation for property taken[,]" (2) "declaring that the decision of the Ohio Court of Appeals is unconstitutional on its face and deprived Plaintiffs of their [rights under the] 5[th] and 14[th] Amendments . . . [because the decision] denied Plaintiffs just compensation for property taken[,]" (3) declaring PUCO's actions unconstitutional because they "violated Plaintiffs' rights to due process under the 5[th] and 14[th] Amendments[,]" (4) declaring PUCO's decision to dismiss Plaintiffs' ratemaking application unconstitutional, and (5) declaring U.S. Bank and Shapiro "conspired to deprive Plaintiffs of their [constitutional] rights[.]" (R. 1, Compl., PageID 16–17.) They also asked the court to "[i]ssue a preliminary and permanent injunction enjoining [U.S.] Bank and [Shapiro] . . . from disposing [WWTP] . . . until just compensation to the Plaintiffs has been paid[.]" (*Id.* at 17.) Plaintiffs explained to the court that, without the injunction, "[n]o other remedy is adequate or complete" to reach the Plaintiffs' goal: "to prevent the immediate sale of" WWTP. (*Id.*; *see also id.* at 15–16 (discussing the significance of the suit's outcome given U.S. Bank and Shapiro's intention to sell WWTP).)

The district court refused. It dismissed Plaintiffs' claims against the state judges on judicial immunity grounds. Without further analysis, the court also found that "Plaintiffs do not have a

cognizable claim" and sua sponte dismissed the action—including the claims Plaintiffs raised against nonjudicial defendants—with prejudice. (R. 4, Op. & Order, PageID 46.) Plaintiffs appeal.

While this appeal was pending, Plaintiffs agreed to sell WWTP as part of its settlement agreement with Shapiro and U.S. Bank. So we granted Plaintiffs' motion to dismiss Shapiro and U.S. Bank from the suit. The remaining defendants then moved to dismiss the case for lack of jurisdiction because the settlement rendered Plaintiffs' remaining claims against them moot.

## II.

Article III "conditions the exercise of federal judicial power on the existence of a live, ongoing case or controversy." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009). The case must satisfy that condition "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). So "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Aaron v. O'Connor*, 914 F.3d 1010, 1015 (6th Cir. 2019) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). And in those circumstances, federal courts no longer have jurisdiction and must dismiss the case. *Pettrey*, 584 F.3d at 703; *see also Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) ("[M]ootness is a jurisdictional question.").

"[N]either party has a legally cognizable interest in the final determination of the underlying questions of fact and law" where the alleged violation will likely not recur and where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631. In other words, "the test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quoting *McPherson v. Mich. High Sch. Athletic*

*Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)). And settlement agreements qualify as the types of interim relief or events that may "deprive the court of the ability to give meaningful relief" and render a case moot. *See id.*; *see also Int'l Union, United Auto., Aerospace, Agr. & Implement Workers of Am. v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983) (en banc).

Two exceptions, however, exist. When "one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot" or "when the situation is 'capable of repetition yet evading review,' . . . then the litigation remains a viable controversy which the federal courts may resolve." *Dana Corp.*, 697 F.2d at 721 (internal citation omitted) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981); *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)). Similarly, a "defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 405 (6th Cir. 2006) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see also Mokdad v. Sessions*, 876 F.3d 167, 171 (6th Cir. 2017).

The district court did not resolve whether the settlement agreement rendered Plaintiffs' case moot because Plaintiffs did not reach the agreement with PUCO and Shapiro until well after the district court dismissed Plaintiffs' claims. But that does not change our review of the mootness question because we "review[] jurisdictional issues *de novo*." *Demis*, 558 F.3d at 512. And "[t]he heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001).

So we must address whether we can provide any "meaningful relief" to Plaintiffs on their claims. For the injunctions Plaintiffs sought against U.S. Bank and Shapiro, the answer is an obvious no. Plaintiffs sought to enjoin U.S. Bank and Shapiro only from "disposing of" WWTP—

something all three parties agreed to in the settlement agreement—"until [the Plaintiffs received] just compensation[.]" (R. 1, Compl., PageID 17.) Plaintiffs' agreement to sell WWTP would supersede any injunctive relief that we can provide so that claim is now moot.

The settlement agreement also mooted Plaintiffs' remaining claims. The declaratory relief Plaintiffs seek deals only with WWTP—*e.g.*, whether PUCO's regulatory decision violated Plaintiffs' rights, whether the mortgaged property included WWTP, or whether the state court's Receivership Order violated Plaintiffs' constitutional rights. And Plaintiffs requested declaratory relief only to support its goal of having us declare the Receivership Order an uncompensated— and therefore unconstitutional—taking so they could "prevent the immediate sale of" WWTP until Plaintiffs "ha[d] been paid." (*Id.*)

But Plaintiffs have agreed to sell WWTP, "completely and irrevocably eradicat[ing] the effects" of the disputed Receivership Order and any sale of WWTP Plaintiffs previously opposed. *Davis*, 440 U.S. at 631. Even if this court granted the declaratory relief Plaintiffs seek, that relief "would . . . make [no] difference to the legal interests of the parties." *Benningfield*, 920 F.3d at 410 (quoting *McPherson*, 119 F.3d at 458). And Plaintiffs' remaining declaratory judgment claims do not fall within either mootness exception.

In any event, we question whether a dissatisfied litigant may *ever* sue an individual state judge in federal court over a decision the state judge rendered after proper adjudication and under their official duties.[1] Despite not "stak[ing] out our own position on the matter," this court has at least "cited . . . favorably" the proposition that "there is usually no case or controversy between judges acting as adjudicators and litigants displeased with litigation outcomes." *McNeil v. Cmty.*

---

[1] We have, however, recognized that prospective declaratory relief might be available against judicial officers in limited circumstances subject to restrictions like abstention doctrines, Article III limitations, and the *Rooker-Feldman* doctrine. *See, e.g.*, *Cooper v. Rapp*, 702 F. App'x 328, 333–34 (6th Cir. 2017); *Ward v. City of Norwalk*, 640 F. App'x 462, 467–68 (6th Cir. 2016).

*Prob. Servs., LLC*, 945 F.3d 991, 996–97 (6th Cir. 2019) (citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–200 (3d Cir. 2000); *In re Justices of Supreme Court of P.R.*, 695 F.2d 17, 21–24 (1st Cir. 1982)).  And although we need not resolve that question today, *see Arizonans for Official English*, 520 U.S. at 66–67 (explaining that we may resolve a mootness question before reaching standing), we doubt Plaintiffs' ability to bring the claims they did against the state judges in federal court.

## III.

Plaintiffs' settlement agreement with PUCO and Shapiro mooted this case.  For that reason, we DISMISS for lack of jurisdiction.