RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JEANNA NORRIS; KRAIG EHM; D'ANN ROHRER,

     *Plaintiffs-Appellants*,

 *v.*

                No. 22-1200

SAMUEL L. STANLEY, JR., in his official capacity as
President of Michigan State University, et al.,

     *Defendants-Appellees*.

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-00756—Paul Lewis Maloney, District Judge.

Argued:  December 7, 2022

Decided and Filed:  July 13, 2023

Before:  KETHLEDGE, WHITE, and BUSH, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Jenin Younes, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., for Appellants.  Stephanie L. Gutwein, FAEGRE DRINKER BIDDLE & REATH LLP, Indianapolis, Indiana, for Appellees. **ON BRIEF:**  Jenin Younes, Gregory Dolin, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., for Appellants.  Stephanie L. Gutwein, Anne K. Ricchiuto, FAEGRE DRINKER BIDDLE & REATH LLP, Indianapolis, Indiana, for Appellees. Deborah J. Dewart, Hubert, North Carolina, Frederick R. Yarger, WHEELER TRIGG O'DONNELL LLP, Denver, Colorado, for Amici Curiae.

—————————————

**OPINION**

—————————————

JOHN K. BUSH, Circuit Judge.   During the COVID-19 pandemic, Michigan State University (MSU) required its employees to receive a vaccine against the disease.   Plaintiffs, who are MSU employees, objected.   They claimed their naturally acquired immunity to COVID-19 should exempt them from the vaccine policy.   That reasoning did not persuade MSU, which imposed disciplinary action against them for not getting vaccinated.   The complaint below alleged that MSU violated plaintiffs' constitutional rights and that the university's vaccine mandate was preempted by federal law.   The district court granted the university's motion to dismiss.   We agree with the district court that, as alleged, the university's vaccine policy neither violated plaintiffs' constitutional rights nor was preempted by federal law.   We therefore AFFIRM.

**I.**

In July 2021, MSU announced a set of "COVID directives" for the 2021 fall semester. Those directives expanded on August 5, 2021, when MSU posted to its website a mandatory vaccine policy.   The new requirement called for all faculty and staff to be either fully vaccinated or receive at least one of a two-dose series of vaccines by August 31, 2021.   The vaccine policy applied to all employees, even those who worked remotely.   Any vaccine approved by the Food and Drug Administration (FDA) or World Health Organization (WHO) satisfied the vaccine policy, including WHO-approved vaccines that had not received FDA approval.

MSU's vaccine policy provided for religious and medical exemptions, which were restricted in nature and application, according to plaintiffs.   Medical exemptions were limited to "CDC-recognized contraindications and for individuals with disabilities under the ADA."   R.55-1, Exhibit H, PageID 1331.   Of note, the policy did not provide a medical exemption based on natural immunity, i.e., immunity acquired from a COVID-19 infection.   Anyone who did not receive a vaccine in compliance with the policy or receive an exemption, medical or religious, was subject to potential disciplinary action, which included potential termination of employment.

When MSU announced these directives, the three named plaintiffs, Jeanna Norris, Kraig Ehm, and D'ann Rohrer, all worked for the university.[1]  Norris tested positive for COVID-19 on November 21, 2020 and received a positive antibody test on August 17, 2021.  Ehm was diagnosed with COVID-19 in April 2021 and received a positive antibody test on August 21, 2021.  Rohrer was diagnosed with COVID-19 in August 2021 and received a serological test on October 4, 2021, which demonstrated her natural immunity.  Based on their natural immunity, plaintiffs argue that it was medically unnecessary for them to be vaccinated.

They therefore did not comply with the vaccine policy.  Thus, Ehm was terminated on November 3, 2021, and Rohrer was placed on unpaid leave.  But Norris did not face disciplinary action because she received a religious exemption from the vaccine requirement on November 19, 2021.[2]

Following the negative employment actions against Ehm and Rohrer, plaintiffs filed their amended complaint on November 5, 2021.  The complaint seeks declaratory and injunctive relief for a class of MSU's employees who have naturally acquired immunity.  They claim violations of their constitutional rights to bodily autonomy and to decline medical treatment.  The complaint alleges that: (1) MSU cannot establish a compelling governmental interest in overriding the claimed constitutional rights of plaintiffs by forcing them to be vaccinated or potentially face termination; (2) the vaccine policy constitutes an unconstitutional condition on continued employment by the state; and (3) the vaccine policy contradicts the federal Emergency Use Authorization (EUA) statute, 21 U.S.C. § 360bbb-3, which preempts any state action requiring an employee receive a vaccine.

---

[1]Between the initiation of this appeal and the issuance of this opinion, MSU voluntarily rescinded its vaccine policy.  But that does not moot this appeal because plaintiffs sought nominal damages for the alleged violations of their constitutional rights. R. 55, PageID 1246. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796, 801–02 (2021).  Nor is there any indication that MSU has undone any of the negative employment actions faced by Ehm or Rohrer, so the harm plaintiffs faced has not been removed. *See Sullivan v. Benningfield*, 920 F.3d 401, 410–11 (6th Cir. 2019); *see also Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006).  And for its part, MSU maintains that the case is not moot.

[2]As a result of the exemption, Norris lacks injury in fact to confer Article III standing. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020).  Ehm and Rohrer, in contrast, have such standing because of the disciplinary consequences they faced.

To support these claims, and particularly the first claim, plaintiffs provided declarations by experts that the significance and efficacy of natural immunity are either similar or superior to receiving a vaccine. Plaintiffs also relied on a CDC study discussing the similarity of efficacy between natural immunity and vaccine immunity, and, with no objection from defendants, the district court considered this information.

Defendants moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). Based on the briefing, the district court granted the motion to dismiss on counts two and three, then after conducting a hearing, dismissed count one as well.

For count one—the substantive due process claim—the district court applied rational basis review to uphold MSU's vaccine requirement. The district court explained that it was not to consider "whether the Vaccine Policy is the best vehicle for achieving the stated goals, but merely whether the University could have had a legitimate reason for acting as it did." *Norris v. Stanley*, No. 1:21-cv-756, 2022 WL 557306, at *4 (W.D. Mich. Feb. 22, 2022) (quoting *Kheriaty v. Regents of Univ. of Cal.*, No. SACV21-1367, 2021 WL 6298332, at *8 (C.D. Cal. Dec. 8, 2021)).

As for count two—the claim of an unconstitutional condition on employment—the district court determined that plaintiffs were not coerced "into waiving their constitutional rights to bodily autonomy and to decline medical treatment in order to receive a governmental benefit." *Norris v. Stanley*, No. 1:21-cv-756, 2022 WL 247507, at *4 (W.D. Mich. Jan. 21, 2022). Because the district court found that employment at MSU was not a governmental benefit in the context of an unconstitutional condition, it dismissed this claim.

Finally, regarding count three—the Supremacy Clause claim—the district court rejected the argument that the EUA statute preempted state action. The district court explained that MSU's vaccine policy "does not preclude Plaintiffs from receiving informed consent regarding the COVID-19 vaccine, nor does it preclude Plaintiffs from refusing the vaccine," so there was no conflict between that policy and the EUA statute. *Id.* at *5.

Plaintiffs timely appealed the judgment of dismissal.

**II.**

We review de novo a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016). In doing so, we must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 672, 678 (2009)). But we "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000).

**A.**

Plaintiffs' substantive due process claim fails because MSU's vaccine policy satisfies rational basis scrutiny, which the district court correctly held governs this claim. We base our standard of review on *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). That case involved a Massachusetts statute, passed in response to smallpox, that empowered local boards of health to adopt mandatory vaccine requirements. *Id.* at 12. The city of Cambridge did so by requiring all residents to receive the smallpox vaccination by a certain date, and those who failed to comply with the statute were fined $5 or jailed until they paid the fine. *Id.* at 13–14. The Supreme Court upheld this vaccine mandate. *See id.* at 25.

The facts of *Jacobson* square well with this case. MSU has been empowered through Michigan's Constitution to have "authority over 'the absolute management of the University,'" which shows Michigan vested its police power in MSU.[3] *Federated Publ'ns, Inc. v. Bd. of Trs. of Mich. State Univ.*, 594 N.W.2d 491, 497 (Mich. 1999) (quoting *State Bd. of Agric. v. State Admin. Bd.*, 197 N.W. 160, 160 (Mich. 1924)). With that power, MSU promulgated COVID-19 directives that included a vaccine policy, enforceable through disciplinary action.

---

[3]In the district court, plaintiffs failed to challenge MSU's authority to enact the vaccine policy, so they have abandoned that argument, despite their attempt to raise this issue on appeal. *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014).

*Jacobson* does not use the language of "rational basis" because, at the time of that decision, the tiers of scrutiny were yet to be defined and labeled by the Supreme Court. But the opinion explains that the Court only considered whether the policy enactment had a "real or substantial relation to its object." *Jacobson*, 197 U.S. at 31. Both Chief Justice Roberts and Justice Gorsuch have recently suggested that the "real or substantial relation" language analogizes to rational basis scrutiny today. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring); *see S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Mem.) (Roberts, C.J., concurring). Even more, the Supreme Court explained in *New York Rapid Transit Corp. v. City of New York*[4] that a "distinction in legislation is not arbitrary" under the Fourteenth Amendment "if any state of facts reasonably can be conceived that would sustain it." 303 U.S. 573, 578 (1938) (quoting *Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 357 (1916)). In that case, the Supreme Court affirmed a motion to dismiss because states receive significant discretion when making policy decisions that invoke considerations similar to the modern rational basis review. *See id.* at 587.

With rational basis scrutiny, we apply a strong presumption of validity when evaluating if the state's action furthers a legitimate state interest. *Ashki v. I.N.S.*, 233 F.3d 913, 920 (6th Cir. 2000). Public health and safety easily fall within the state's legitimate interests. *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ."); *see S. Bay United*, 140 S. Ct. at 1613 (Roberts, C.J., concurring). When analyzing the policy under rational basis review, the "reasoning in fact underl[ying] the [government's] decision" is "constitutionally irrelevant" because the court "will be satisfied with the government's rational speculation linking the regulation to a legitimate purpose, even [if] unsupported by evidence or empirical data." *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011) (internal quotation marks omitted) (quoting *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002)). So while plaintiffs argue that the research they cite shows that vaccinating naturally immune individuals carries little to no benefit, that argument is not enough to strike down the vaccine requirement under rational basis review in the face of a

---

[4]Notably, that case was decided one month before *United States v. Carolene Products Co.*, where the Supreme Court coined the rational basis review we use today. 304 U.S. 144, 152–54 (1938).

rational basis for MSU's policy. The policy put in place by the state need not be narrowly tailored nor further a compelling governmental interest as it would need to survive strict scrutiny. Instead, to pass rational basis review, it is sufficient that MSU could rationally believe that requiring the vaccine for naturally immune individuals would further combat COVID-19 on its campus.

Plaintiffs make many of the same claims about the vaccine requirement as did the plaintiff in *Jacobson*: delegating police power to administrative bodies on issues of public health is improper, liberty interests in bodily integrity and autonomy are violated, and the policy is arbitrary. *Jacobson*, 197 U.S. at 25–26, 28. The scientific consensus around the smallpox vaccine was contested in that case just as plaintiffs challenge the science underlying natural immunity compared with vaccine immunity here. *Id.* at 30. The Supreme Court was not convinced by these arguments in 1905 and, absent any indication from the Court that *Jacobson* is to be overruled or limited, we are bound to apply that decision to reject plaintiffs' arguments here.

We also note that the government actor here—MSU—was plaintiffs' employer. The government receives "far broader powers [as the plaintiffs' employer] than does the government as a sovereign" creating policies for all citizens. *Waters v. Churchill*, 511 U.S. 661, 671 (1994). Governments acting as employers have broader power and discretion because "government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). Since public health is a legitimate interest and plaintiffs were MSU employees, the presumption of the vaccine policy's validity is strengthened even further.

Plaintiffs bear the heavy burden of showing that no possible rational justification for the policy exists. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005). They fail to meet this burden. In their brief, plaintiffs acknowledge that MSU has a legitimate interest in protecting public health but characterize MSU's actions as an attempt "to exert control over individuals' personal health decisions." Appellants' Brief at 38. This effort to skirt MSU's legitimate interest is unconvincing.

Plaintiffs point to several cases to argue for intermediate scrutiny, but they fail to mention a single case in any federal jurisdiction when a court denied or rejected the application of *Jacobson*'s rational basis standard to a COVID-19 vaccine mandate. Instead, plaintiffs invoke cases that meaningfully differ from mandatory vaccine requirements and involve other facts, ranging from forced administration of antipsychotic drugs to prisoners, *Washington v. Harper*, 494 U.S. 210 (1990), to refusing unwanted lifesaving medical treatment, *Washington v. Glucksberg*, 521 U.S. 702 (1997), and other far afield contexts. Appellants' Brief at 26–29. These cases are not a persuasive reason to distinguish *Jacobson* and other, more recently decided, cases that upheld state-imposed vaccine mandates. *See Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593–94 (7th Cir. 2021) (Easterbrook, J.).

Further, plaintiffs do not adequately explain how receiving a vaccine violates a *fundamental* right, which would invoke a higher level of scrutiny. Absent such plausibly alleged explanations, the complaint warrants dismissal under rational basis review. *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 464 (1988) (in affirming a dismissal on the merits, the Court explained that the statute challenged in that case "discriminate[d] against no suspect class and interfere[d] with no fundamental right").

MSU's policy furthers a legitimate governmental interest of protecting public health. Thus, the policy passes rational basis review.

**B.**

Given that MSU's policy satisfies rational basis review, no employee's rights are violated, and thus the policy is not an unconstitutional condition on plaintiffs' employment. *See Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 913 (6th Cir. 2019) (en banc). As the Court explained in *Jacobson*, "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be . . . wholly freed from restraint." 197 U.S. at 26. And MSU may condition plaintiffs' employment in a constitutional manner. For example, the Supreme Court affirmed the dismissal of a complaint against Missouri's age restriction for state judges. *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991). The Court reasoned that the state must "assert only a rational basis for its age

classification" because age is not a suspect classification, so that age condition on employment was constitutional. *Id.*

Plaintiffs cite several unconstitutional-condition cases to challenge the district court's conclusion that their claim fails because they show no entitlement to a government benefit. But every case plaintiffs invoke involved a First Amendment right. Appellants' Brief at 40–42. And we need not reach this issue because, as explained, plaintiffs do not plausibly allege any constitutional violation resulting from the vaccine mandate.

## III.

We now reach plaintiffs' argument that MSU's policy is preempted by federal law regulating the distribution and use of pharmaceuticals.

Typically, only FDA-approved pharmaceuticals can be marketed and prescribed in the United States, 21 U.S.C. § 355(a), but emergency use authorization (EUA) is a notable exception. *McCray v. Biden*, No. CV 21-2882, 2021 WL 5823801, at *2 (D.D.C. Dec. 7, 2021). An EUA allows for public distribution of a pharmaceutical that has not received a final FDA approval. 21 U.S.C. § 360bbb-3. The EUA statute instructs that, "to the extent practicable given the applicable circumstances," the Secretary of Health and Human Services (HHS) "shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization . . . as the Secretary finds necessary or appropriate to protect the public health." *Id.* § 360bbb-3(e)(1)(A). These conditions are to include:

> Appropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

*Id.* § 360bbb-3(e)(1)(A)(ii)(III).

Plaintiffs assert in their complaint that MSU's policy is preempted because it conflicts with the EUA statute. In their appellate briefing, plaintiffs argue this federal statute either preempts MSU's policy or renders it irrational because it contradicts federal law. Appellants' Brief at 50. We find these arguments unpersuasive.

The EUA statute's relevant language—"ensur[ing] that individuals to whom the product is administered are informed . . . of [their] option to accept or refuse" the vaccine—addresses the interaction between the medical provider and the person receiving the vaccine, not the interaction between an employer and an employee receiving a vaccine.  21 U.S.C. § 360bbb-3(e)(1)(A)(ii); *see id.* § 360bbb-3(a)(1)(A) (requiring conditions "for a person who carries out any activity for which authorization is issued"); *Klaassen v. Trs. of Ind. Univ.*, 549 F. Supp. 3d 836, 870 (N.D. Ind. 2021).  The statute is meant to ensure patients' consent to the pharmaceutical they are receiving, but this does not mean that MSU cannot require vaccination as a term of employment.  Nor do Plaintiffs suggest that HHS has established any conditions forbidding employment-based vaccination requirements.  The language of the statute also does not undo the fact that MSU's policy is furthering a legitimate governmental interest, so plaintiffs' claim that the policy must be irrational because of this statute are unfounded.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of all claims.